[No. 14368.  Department Two.  February 11, 1918.]

VERA LAND COMPANY, *Respondent,* v. MORRIS METCALF *et al., Appellants,* W. A. RIDGWAY *et al., Defendants.*[1]

VENDOR AND PURCHASER—CONTRACTS—CONSTRUCTION.  A contract for the sale of land to one who agreed to irrigate and subdivide it, and resell tracts at not less than $150 per acre, the purchase money to be paid in installments from the receipts from resales, upon monthly accounts, is not a contract of agency, but is one of purchase and sale, which may be forfeited for the vendee's default; and in the absence of collusion, the vendor is not responsible for such default to purchasers from the vendee, although it received its share of the money paid in by them upon their contracts with the vendee.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered April 27, 1917, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court.  Affirmed.

*W. B. Mitchell* (*R. L. Campbell,* of counsel), for appellants.

*A. E. Gallagher,* for respondent.

MORRIS, J.—In November, 1911, the Vera Land Company, contracting as owner, entered into a contract with defendant Ridgway for the sale of lands near Spokane.  The price of the land was fixed and Ridgway was given ten years in which to complete his payments, paying interest at six per cent per annum upon the purchase price, commencing at a date eighteen months subsequent to the date of the contract.  Ridgway was

[1]Reported in 170 Pac. 1012.

also obligated to pay all taxes to be assessed against the land. The contract in general provided that Ridgway would improve the land by developing it for sale for agricultural and fruit-growing purposes, provide a system of irrigation which would provide subsequent purchasers with water and lights, expending for this purpose not less than $50,000, and deposit $10,000 in the bank to be paid out in the construction of light and water improvements upon the land. Ridgway was to pay for the land by paying to respondent fifty per cent of all monies received by him on the sale of the land, which was to be sold at not less than $450 per acre. These payments were to apply, first, upon the interest, and the balance upon the purchase price of the land. In making sales, Ridgway was bound by the contract to sell upon terms of not less than ten per cent cash, with deferred payments of not less than ten per cent, so as to conform to the provisions of his contract that the appellant would receive payment for the land within ten years. Ridgway was further to account to respondent once each month for all lands sold and all moneys collected, giving names and post office addresses of the purchasers and other details of all sales made by him. The contract further provided that Ridgway was to sink wells and install pumps for irrigation purposes, and that respondent would convey to Ridgway or his successors such portions of the lands as were paid for at the rate of $250 per acre. The contract provided for transfer by Ridgway to a corporation to be organized by him, and for forfeiture on breach of its terms.

Ridgway thereupon organized a corporation, known as the Spokane Orchard Homes Company, and assigned to it the contract of sale. The land company assented to this assignment and acquiesced in certain modifications of the terms of the contract as to amount

of money to be paid to it on subsequent sales. The Spokane Orchard Homes Company proceeded to plat the land and offer it for sale, reporting such sales to the land company as provided in the original contract. Subsequently another corporation, known as the Orchard Homes Water & Light Company, was organized, composed of the same individuals who organized the first corporation, and the second corporation undertook to carry out the provisions of the contract relating to the light and water features.

No attempt has been made, except in a general way, to state the provisions of the contract or the undertakings of Ridgway or of the two corporations organized by him, such detailed statement not being material to the conclusions we have reached.

The land company brought this action in May, 1915, making Ridgway and the two corporations defendants, alleging the default of the original contract in several particulars, and praying for a forfeiture and the quieting of its title against defendant. Subsequently an amended complaint was filed in which some sixty purchasers who had acquired an interest in the land through Ridgway or through the Spokane Orchard Homes Company, were made defendants, with a prayer for the same relief as to them. Many of these last named defendants answered and set up their contracts with Ridgway or the Spokane Orchard Homes Company and, by way of cross-complaint, prayed that their contracts be enforced against the land company and that it be held to the undertaking of Ridgway and the two corporations organized by him. The result of the action was in favor of respondent, and cross-complainants appealed.

The evidence is voluminous, and no attempt will be made to review it here. There is only one question in the case, and that is the liability of the land company

for the fulfillment of the contracts of Ridgway or his two corporations.

The lower court found that the contract between Ridgway and respondent was a contract of sale, and that, by reason of several defaults, Ridgway and the two corporations organized by him had forfeited all rights thereunder; that the respondent was in no particular responsible for the default in the contracts of the several cross-complainants, and that neither the land company nor any of its officers were interested in the corporations organized by Ridgway. These and like findings must be sustained. We can find nothing in this record to charge the respondent with liability for the fulfillment of the contracts of appellants, or charge it with the default of Ridgway or of the Spokane Orchard Homes Company. The land company is neither party nor privy to these contracts and never, so far as we can ascertain, authorized or adopted them, nor held itself out in any way as bound by them.

The liability is sought to be fastened upon the land company upon two theories: (1) That the original contract was one of agency, and (2) that the land company, its officers and Ridgway and his two corporations and their officers conspired together to formulate and carry out a scheme for the sale of these lands that would exempt the land company from liability in case the scheme failed.

We can find no evidence to sustain either theory. The contract between the land company and Ridgway is a contract of sale and purchase; and while it is true that the land company and its officers knew what Ridgway and his two corporations were doing in their efforts to sell the land to the appellants and others, there is no evidence that would link them all into a conspiracy to defraud. The scheme failed for the same reason that many other such projects have failed, but

failure is not evidence of fraud, nor does inability to keep one's contract establish an intent to deceive.

Appellants make much in their brief of what they term the fraud of the respondent in receiving its share of the money paid by these appellants upon their contracts and then seeking the aid of a court of equity to deprive appellants of any interest in the land. The forfeiture of the Ridgway contract must depend upon whether or not its conditions have been broken. Ridgway must first perform his undertaking with respondent before he can obtain any rights he could pass on to appellants. That they contracted with him or with his corporations under the belief that he or they would be able to fully perform what they undertook is, in the light of their failure, a misfortune, but it is not a misfortune that can be visited upon respondent. The law must be as rigid in giving to respondent all its rights under its contract as appellants ask in the enforcement of their contracts, and whatever misfortune results must rest where it properly belongs—upon the one who dealt with one who could not perform. It is not a fraud in law or equity for respondent to insist upon its rights, even though the decreeing of those rights means the undoing of appellants.

The judgment is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.