CORAL GABLES SECURITIES CORPORATION, *et al.,* v. MIAMI CORPORATION, a Delaware Corporation.

166 So. 555.
Division A.
Opinion Filed March 6, 1936.
Rehearing Denied March 30, 1936.

*John M. Murrell, W. L. Freeland, Clifton D. Benson* and *Benjamin E. Carey,* for Appellants;

*Henry P. Adair, Henry F. Martin, Garland M. McNutt,*

*Knight, Adair Cooper & Osborne,* and *Hudson & Cason,* for Appellee.

DAVIS, J.—This is an appeal by the Coral Gables Securities Corporation, and others, as defendants in the court below from an order of the Circuit Court of Dade County overruling and denying their motion to dismiss for want of equity a bill of complaint filed against them by Miami Corporation, as complainant.

The appellee, Miami Corporation, a Delaware company authorized to do business in the State of Florida, was in the year 1924 the owner of a large tract of land adjacent to a real estate subdivision near Miami in Dade County, Florida, called Coral Gables, which subdivision later became known as the City of Coral Gables. George E. Merrick, one of the appellants, was an experienced land developer of national prominence and engaged in the development of Coral Gables subdivision prior to, during and shortly after the Florida real estate boom.

The bill of complaint to which the motion to dismiss was directed and overruled, was filed by Miami Corporation, as vendor, against Coral Gables Securities Corporation, as vendee, and several hundred others, comprising largely contract lot purchasers from the vendee and its successors. The basis of the suit was an agreement that had been entered into on December 20, 1924 (and thereafter supplemented and modified) between the appellee, Miami Corporation, as vendor and the appellant, Coral Gables Securities Corporation, as purchaser, by which agreement the vendor had agreed to sell, and the purchaser to buy, a tract of land in Dade County known as the "Cocoplum Property" on the terms and conditions stated in the agreement.

The tract of land described as the "Cocoplum Tract" contained approximately seven hundred and fifty-eight acres

bordered on the waters of Biscayne Bay, and was largely submerged but suitable for filling. It was sold with the intention that it should be subdivided, developed, improved and put on the market in connection with the high lands included in the same tract.

Among other things the agreement of December 20, 1924, provided that the purchase price for the tract of land involved should be paid as follows: (a) part in cash and in specified installments over a period of ten years referred to as the cash purchase price; and (b) the remainder of the purchase price was to be amounts equal to specified percentages of the profits of the purchaser. Incidental to the agreement concerning the purchase price, certain provisions for the protection of the vendor were incorporated. These were a right on the vendor's part to approve the plan of development, to audit books of the vendee and restrictions prohibiting the resale of the property to stockholders or officers of the purchaser except for home sites. By its bill of complaint, the Miami Corporation, the appellee, sought an accounting and also an enforcement and foreclosure of its alleged vendor's lien on a portion of the property referred to in this case as "residue of the Cocoplum Tract," the other portion of the property having been released to lot purchasers or reconveyed by the purchaser and its assigns to the vendor. It is alleged that several years prior to the filing of the bill of complaint the purchaser and its assigns defaulted in the contemplated performance of the agreement of December 20, 1924, and thereupon abandoned the property and that those holding lot sales contracts who were made defendants in the case, likewise had defaulted in their agreements and abandoned their contracts under such circumstances as to occasion the suit instituted by the vendor.

To the bill of complaint filed by the Miami Corporation, the vendee, Coral Gables Securities Corporation, George E. Merrick, the developer, and a number of the contract purchasers of lots involved in the property, interposed motions to dismiss the bill. They alleged as grounds therefor the general proposition that the bill was without equity and constituted an attempt by one joint adventurer to maintain a suit in equity against its co-adventurers and at the same time was a suit seeking to assert independent grounds of relief against third parties who merely held contracts with the alleged co-adventurers, which contracts the co-adventurers had not performed on their part for the benefit of said third parties.

It is settled law in this State that if a bill of complaint in equity sets up any cause whatsoever for equitable relief that an order denying a motion to dismiss the bill in its entirety must be affirmed. Chappell v. Watson, 119 Fla. 711, 160 Sou. Rep. 867; Yates v. St. Johns Beach Development Co., 118 Fla. 788, 160 Sou. Rep. 197.

The bill of complaint, as we know it, sufficiently avers the status of the Miami Corporation as a vendor of real estate bringing suit against Coral Gables Securities Corporation, as purchaser (with concomitant joinder of several hundred contract purchasers of lots from the vendee) for the enforcement and foreclosure of a vendor's lien and for an accounting incident to that form of relief. The written agreement of December 20, 1924, between the vendor and the alleged purchaser has been attached to and made a part of the bill of complaint. The bill alleges that prior to the institution of the suit, the vendor notified the purchaser and its assigns that it had, because of the defaults of the purchaser under the terms of the agreements, elected to accelerate the unmatured installments of the purchase price

and set forth the substance of such alleged notice. The bill avers in positive terms that the purchaser of the property had long prior to the time of the institution of the suit abandoned development thereof and that the contract purchasers of lots had themselves defaulted in their respective contracts with the purchaser.

The nature of the agreement pleaded was one whereby it appears that the owner of real estate was agreeing to sell land for the purpose of development, and that while the enterprise was in some respects one in the nature of a joint adventure in a practical sense, it was not so in a legal sense so long as the terms of the transaction and of the agreement were adhered to as set forth in the writing evidencing the same. By the terms of the agreement the purchaser definitely agreed to buy certain real estate which the appellee had agreed to sell. The price to be paid therefor was part cash and installments calculated according to a fixed price per acre. Although certain additional amounts equal to specified percentages of the net profits which the purchaser might make on the resale of the property were provided in the contract to be paid and were in their nature contingent in character, yet they were undertaken to be paid as a part of the purchase price of the property sold and not otherwise.

Where a contract has been entered into between the owner of land and a purchaser of the same providing for the sale and conveyance of certain real estate upon a stated consideration which is definite and certain, the mere fact that the contract provides for a "bonus" payment as part of the purchase price in the form of certain additional amounts equal to specified percentages of the net profits which the purchaser contemplates making on a development and resale of the property does not create *per se* the relation of joint adventurers as between the owner and purchaser.

Nor does the fact that contractual provisions appropriate for the protection of the vendor's rights in the property, such as reserving to the vendor the privilege of approving or rejecting the plans for development and sale, providing for joint selection of the accountant to audit the books of the purchaser for the purpose of arriving at the "bonus" purchase price to be paid by the purchaser and limiting the sales of property to others than stockholders and officers of the corporation, and in otherwise providing for the protection of the vendor's rights as such to the bonus payment contractually provided for, have the effect of converting the relation of vendor and purchaser into that of joint adventurers insofar as parties to the contract are concerned. Mayer v. Eastwood-Smith & Co., 122 Fla. 34, 164 Sou. Rep. 684.

There can be no joint enterprise without an agreement express or implied to enter upon an undertaking in the objects and purposes of which the parties have a community of interest, and in pursuance of which they have equal authority. As a legal concept, joint enterprise is not a status created by law. Liability of one member of a joint enterprise for the acts of another is a vicarious liability founded upon the relationship that has arisen between parties wholly *ex contractu;* it springs from the operation of law upon the practical relationship into which the parties have voluntarily brought themselves by contract and is largely governed by principles analogous to those applicable to partnership and agencies. Potter v. Florida Motor Lines, Inc., 57 Fed. (2nd) 313.

To summarize: The bill of complaint alleges a total of not less than $1,457,332.03 due and unpaid on the purchase price of the land specifically contracted to be bought and sold; avers facts that imply clearly that the parties to the

alleged sale agreement at all times heretofore during the course of its performance and enjoyment, have acted and dealt with each other as vendor and purchasers of the real estate project described in the contract and not as co-adventurers in its development; specifically asserts that the vendor has performed all of the covenants and agreements on complainant's part due to be kept and performed incident thereto; sets up that it stands ready, willing and able to perform and that it, by its bill, offers to perform whatsoever more is required to be now done in order to make a conveyance of the property complete according to the terms of the agreement sued on, as supplemented and modified, and, after reciting numbers of transactions had concerning the land involved by the alleged purchaser with third parties, which third parties are alleged to have dealt with it subject to the agreement sought to be foreclosed, advances the equitable claim that its contract rights as against the defendants, and each of them, are superior in equity to any pretended rights of any of the named third parties, and thereupon prays as relief that complainant vendor's lien under its contract be now foreclosed upon the property described in the bill of complaint as the residue of the "Cocoplum" tract remaining subject to complainant's lien and that in default of payment of the ascertained debt due the vendor as the unpaid purchase price for said land, that the property foreclosed upon be decreed to be sold for the satisfaction of complainant's demands, and that appropriate proceedings to that end be thereupon had.

Such a bill *prima facie* alleges a cause for equitable relief that requires an answer from the defendants, who may therein and thereby offer up any special or peculiar equities they may have individually become entitled to assert in rebuttal to the equitable title *prima facie* exhibited on the face

of the bill a sufficient ground of complaint for the relief of foreclosure therein and thereby sought. Vera Land Co. v. Metcalf, 100 Wash. 306, 170 Pac. Rep. 1012; Boyd v. Hunter, 104 Fla. 561, 140 Sou. Rep. 666; Dubos & Co. v. Jones, 34 Fla. 539, 16 Sou. Rep. 392; Duval v. Walton, 107 Fla. 60, 144 Sou. Rep. 318; Smalley v. Sovereign Finance Co., 102 Fla. 32, 135 Sou. Rep. 558.

The order appealed from is affirmed and the cause remanded with leave to defendants to answer the bill within such time as the Chancellor shall, by his order to that effect, decide.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.