Mr. Joseph Garcia Chairman Tampa Port Authority Post Office Box 2192 Tampa, Florida 33601
Dear Mr. Garcia:
On behalf of the Tampa Port Authority you ask the following question:
May the Tampa Port Authority enter into a contract for the purchase of land wherein the funding for the purchase will be derived from future proceeds from the property and from non-ad valorem tax revenues?
In sum:
The Tampa Port Authority may enter into a land purchase contract in which funding is derived from future proceeds from the property and from non-ad valorem tax revenues without violating ss. 10 and 12, Art. VII, State Const., since the property would be transferred to the authority with no mortgage and the authority's only obligation would be the payment of a promissory note from non-ad valorem tax revenues and profits from the operation of the property.
The Tampa Port Authority (authority) was created as the governing body of the Hillsborough County Port District.[1] Among the powers conferred on the authority is the power to: "acquire by purchase, eminent domain, gift, grant, franchise, lease, or contract any property, real or personal . . . ."[2] Furthermore, the authority has the power [t]o borrow money and incur indebtedness; to issue revenue bonds[3] or revenue certificates upon or without security as the authority may determine; . . .[and] [t]o make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers . . . .[4] The enabling legislation for the authority, however, dictates that prior to acquiring ownership, control or undertaking the operation of any project,[5] the authority must give twenty days' notice of a public hearing at which the public's views will be heard.[6]
You state that the authority proposes to enter into one or more land purchase contracts to acquire additional port property. The purchase would involve a payment of some cash and the balance will be paid by an unsecured promissory note of the authority, with the seller obligated to convey the property free and clear of any mortgage. There may be other payments in the form of additional purchase price or additional interest based on the earnings, profits or revenues from the land purchased.
The promissory notes provide for payments from non-ad valorem tax revenues and profits from operating the property, leasing the land to third parties or selling the land. Furthermore, the promissory notes specifically provide that the authority has no obligation to levy and collect ad valorem taxes to pay the note[7] and that the seller has no rights of approval over the use and operation of the land by the authority. The note would provide that the seller's remedy is limited to a suit for damages, in the event the authority defaults on its payment.
Two constitutional provisions have potential application to a financing scheme by a governmental entity with ad valorem taxing power. Section 12, Art. VII, State Const., provides:
Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or
(b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
In this instance, the promissory notes are unsecured and state that the authority has no obligation to levy ad valorem taxes for their payment. Since the indebtedness is to be paid only from non ad valorem sources, there is no pledge of ad valorem taxes requiring a referendum.[8]
Section 10, Art. VII, State Const., provides: Neither the state nor any county, school district, municipality, special district, or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person; but this shall not prohibit laws authorizing:
(c) the issuance and sale by any county, municipality, special district or other local governmental body of (1) revenue bonds to finance or refinance the cost of capital projects for airports or port facilities . . ., when . . . the revenue bonds are payable solely from revenue derived from the sale, operation or leasing of the projects. . .
The primary purpose of this constitutional prohibition against using the taxing authority of a governmental entity to assist a private corporation, association, partnership or person is to protect public funds from being exploited primarily for private purposes, with only incidental benefits to the public.[9] Clearly, the Legislature, by passage of the special act creating the authority and granting it the power to acquire property for port facilities, has implemented the constitutional provision allowing laws authorizing revenue bonds to finance capital projects for port facilities. Thus, the acquisition of additional port facilities by the authority would fulfill a public purpose.
The question arises, however, whether the unsecured promissory notes, providing for additional purchase price or additional interest payable to the private entity contingent upon adequate revenues from the property, create a joint ownership, partnership, or lending or use of the authority's credit prohibited by s. 10, Art. VII, State Const.
Joint ownership is not defined for purposes of the constitutional prohibition. Generally, however, the term "ownership" connotes the "right of one or more persons to possess and use a thing to the exclusion of others . . . involving as an essential attribute the right to control, handle, and dispose."[10] "Partnership" has been defined to mean the "voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them."[11] Given that the seller in this case would have no right of possession or control, it does not appear that the transaction creates a joint ownership or partnership prohibited by s. 10, Art. VII, State Const.
You have raised the issue of whether the financial arrangement constitutes a "joint venture" which would be constitutionally prohibited. In order to have a joint venture, all the following characteristics must be present: (1) a community of interest in the performance of the common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses incurred in the venture.[12] While it might be argued that the parties here have the common interest of producing a profit from the operation of the transferred property in order to insure a profit from which additional purchase money or interest will be paid, there is no indication that the seller of the property has any right of control over the property.
Furthermore, it has been judicially determined that no joint venture relationship is created by a contractual arrangement between the owner of land and a purchaser providing for conveyance at a stated price, with a provision for a bonus payment as part of the purchase price based upon a percentage of profits received by the purchaser after development and resale of the property.[13]
The situation here is substantially similar in that the authority agrees to pay additional amounts to the seller in the event there are profits from the operation of the port facility.
Based upon the above, it appears the authority may enter into a port facility purchase contract in which funding is derived from future proceeds from the property and from non-ad valorem tax revenues and a contingency provision that additional purchase price or interest be paid from profits of the operation of the facility.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 4, Ch. 84-447, Laws of Florida.
[2] Section 7(b), Ch. 84-447, Laws of Florida. See also, s. 7(x), Ch. 84-447, Laws of Florida, authorizing the authority to own any real or personal property or to acquire any estate therein.
[3] Section 13, Ch. 84-447, Laws of Florida, provides that revenue bonds issued by the authority shall not be deemed to constitute a debt of Hillsborough County or a pledge of the faith and credit of the county or the port district.
[4] Sections 7(d) and (f), Ch. 84-447, Laws of Florida.
[5] Section 3(e), Ch. 84-447, Laws of Florida, defines "[p]roject" to mean channels; anchorage areas; jetties; breakwaters; harbors; canals; locks; waterways; tidal and turning basins; wharves; docks; piers; quays; slips; bulkheads; public landings; terminal storage and sheddage facilities; warehouses; refrigeration, cold storage and quick freezing plants; stockyards; elevators; shipyards; marine railways; drydocks; oil tanks; pipe lines; terminal railway facilities, including rolling stock, beltline railroad ferries, and car ferries; police boats; bridges; causeways; tunnels; facilities for the loading and handling of passengers, mail, express, freight, and other cargo; and any and all other facilities, including all property, rights, easements, and franchises relating to any such project or projects which by resolution the authority may deem necessary and convenient.
[6] Section 7, Ch. 84-447, Laws of Florida, also requiring that the notice of public hearing be published in a newspaper of general circulation within the district.
[7] See also, s. 13, Ch. 84-447, Laws of Florida, providing that revenue bonds issued by the authority are not deemed to constitute a debt of Hillsborough County or a pledge of the faith and credit of the county or the port district.
[8] See, State v. Miami Beach Redevelopment Agency, 392 So.2d 875,898 (Fla. 1980) (local revenue sources other than ad valorem taxation may be pledged without referendum approval). See also, AGO's 88-53 (special district may enter into a lease purchase agreement in which lessor has no right of repossession and no security interest is created which might be used to coerce the district to levy ad valorem taxes in order to avoid loss of the property) and 89-58 (no approval by electors required where debts or obligations are payable solely from sources other than ad valorem taxes and there has been no direct or indirect pledge of the governmental unit's property, credit or general taxing power). Cf., AGO 80-9 (municipality may not finance purchase under agreement granting a security interest to seller allowing foreclosure and liability for deficiency should default occur, without prior approval of electors).
[9] See, State v. Miami Beach Redevelopment Agency, 392 So.2d 875,885 (Fla. 1980).
[10] Black's Law Dictionary Ownership 997 (Fifth ed. 1979).
[11] Black's Law Dictionary Partnership 1009 (Fifth ed. 1979).
[12] See, Florida Tomato Packers, Inc. v. Wilson, 296 So.2d 536,539 (3 D.C.A. Fla., 1974).
[13] See, Coral Gables Securities Corporation v. Miami Corporation, 166 So. 555, 557 (Fla. 1936).