WILLIAM BOYD and CARROLL W. BOYD, *Appellants,* vs. MARY L. HUNTER, *Appellee.*

140 So. 666.

En Banc.

Opinion filed March 25, 1932.

*Ross Williams* and *George M. Okell,* and *Bertram E. Harcourt,* for Appellants;

No appearance for Appellee.

BUFORD, C.J.—This case is before us on appeal from a final decree and an order on demurrer incorporated in answer to a second amended bill of complaint. The record shows that appellee, who will be referred to hereafter as complainant and William Boyd, one of the appellants, who will hereinafter be referred to as defendant, entered into an agreement in writing on the 6th day of February, 1924, concerning the purchase and resale of a certain lot of land in Miami, Florida. The written agreement was in words and figures as follows:

"This agreement made and entered into this 15th day of February, 1924, between Wm. Boyd, party of the first part, and Mary L. Hunter, party of the second part;

It is hereby understood and agreed that the party of the first part will pay to the party of the second part, one-half of the profits of Lot Two (2) Block Five (5) Altos Del Mar No. 2 (two) after all expenses are deducted, taxes, interest on all moneys invested in said lot and all other expenses as to any and all improvements, etc.

This property must not be disposed of by any person or persons without full permission of the party of the first part who reserves the right and all control of the lot herein mentioned.

No percentage will be allowed for selling said lot unless by consent of said first party herein mentioned.

That if said first party desires to hold indefinitely or use said lot as a home site then said first party should pay said second party her interest in said lot at market price on said date of such settlement."

It is alleged that after this contract was signed by the parties the complainant Mary L. Hunter procured the lot of land to be conveyed to the defendant for the sum of $7,000.00. It is alleged in the bill of complaint that on August 10, 1925, the reasonable market value of the land was $50,000.00 and that she then advised the defendant that the land could be sold at about that price

and that the defendant then, to avoid carrying out the terms of his contract with the complainant, conveyed the property to his son, Carroll W. Boyd, by deed reciting consideration in the sum of "Ten ($10.00) and more Dollars ($10.00 & more) lawful money of the United States".

The bill of complaint alleges:

"Complainant avers that at the date of the aforesaid execution and delivery of deed to said Carroll W. Boyd that he was then and there approximately of the age of twenty-one years, a resident of the State of New York and had no knowledge of property or as to the value of any lands situate in Dade County, Florida, and that he did not pay to the respondent William Boyd or his wife Ella Boyd any sum or sums of money whatsoever or any consideration for the execution and delivery to him of said deed of conveyance, and that said deed of conveyance, so executed by the said William Boyd and Ella Boyd, his wife, to Carroll W. Boyd was executed and delivered solely for the purpose of defrauding and defeating your complainant out of any profits under the contract aforesaid, and was fraudulent in manner and form as aforesaid:

Complainant avers that said lot at the time of the execution and delivery of said deed to said Carroll W. Boyd was reasonably of the value of $50,000.00, thereby netting a profit of $43,000.00 to be divided equally between complainant and respondent William Boyd; and that as aforesaid the said Carroll W. Boyd paid no consideration for the said property but received the deed thereto so as to deceive and defraud complainant, and that in truth and in fact the said respondent William Boyd is still the owner of said lot and that the legal title thereto is held by the respondent Carroll W. Boyd in trust for the respondent William Boyd, and that your complainant is entitled to a division of the profits which could have been made upon the sale of said property if in fact the same had been sold in good faith and at the market value thereof.

Complainant avers further that by reason of the com-

bination and actions of the said respondent William Boyd and Ella Boyd, his wife, and said respondent Carroll W. Boyd that the same is tantamount to the election of the said William Boyd to hold said property individually or use the lot as a home site, and that he thereupon at the date of the execution and delivery of said deed to his son Carroll W. Boyd became liable under the terms and conditions of said contract to account to complainant by reason of the profits to be had in effecting sale of said property as though the same had been sold upon the market and at the then market price thereof.''

The bill alleges that the property could have been sold at a profit of $43,000.00 at the time the alleged fraudulent conveyance was made to Carroll W. Boyd and that complainant is entitled to a decree cancelling the deed purporting to convey the premises to Carroll W. Boyd and requiring the defendant William Boyd to pay to the complainant one-half of the profit which she alleges could have been realized from a resale of the land at that time, it being alleged that the action of William Boyd in conveying the property to Carroll W. Boyd constituted a determination on his part to retain possession of the lot aforesaid and that under the terms of the contract he was thereupon bound to pay to complainant one-half the market value of the land less the costs thereof to him, and complainant prayed that the decree establish a lien in favor of complainant on the land to enforce the payment to her of the alleged one-half of the possible profits of the sale thereof.

The appellee has not favored us with a brief and we are unable to ascertain upon what theory she invoked the aid of a court of equity. The contract is vague and uncertain. It appears that at most it could only be deemed and held to be a promise on the part of the defendant to compensate the complainant for negotiating the purchase of the land for him a sum equal to one-half of whatever

profit he might make out of the resale of the land, if and when he should decide to resell it, or to pay her a sum equal to one-half of the market value of the land after having deducted from the market value its gross costs to him plus interest, if and when he decided to retain possession of the same and not to dispose of it by resale.

It will be observed that the contract specifically provided:

"This property must not be disposed of by any person or persons without full permission of the party of the first part, who reserves the right and all control of the lot herein mentioned. No percentage will be allowed for selling said lot unless by consent of said first party herein mentioned."

Several essential elements are lacking to constitute this transaction a joint venture between the parties. The complainant, so far as the record shows, had no authority to sell or to offer the land for sale. She had no authority to bind the defendant in any manner in connection with the transaction and the defendant had no authority to bind her. She acquired no interest, either in trust or otherwise, in the land.

There were no allegations in the second amended bill of complaint which would warrant the intervention of a court of equity for the purpose of having an accounting between the parties, there being no allegations that any money had come into the hands of the defendant in which the complainant had any interest whatsoever. The complainant had no interest in the land and, therefore, there existed no basis which would warrant intervention of a court of equity to cancel and set aside the deed from the defendant to his son as fraudulent, although the complainant might have acquired the right to maintain a suit in equity for this purpose if she had first filed a suit at law to collect the amount alleged to be due her for

her services under the terms of the contract and then filed her suit in equity in the nature of a creditor's bill.

She had no lien upon the lands to enforce the payment of her compensation as a real estate broker.

In the case of Levitt v. Axelson, opinion filed June 29, 1931, reported 135 Sou. 553, this Court held:

"A court of chancery cannot enter a personal decree for the payment of money claimed as a part of a broker's commission for effecting a sale of real estate when no other relief is decreed to the complainant, and the transaction involving the claim of real estate commission, although embraced in a bill stating a proper cause of action for equitable relief, is an entirely different cause of action interjected into the suit by the complainant as a ground of relief additional to the equitable relief sought."

It appearing that the second amended bill of complaint contained no allegations constituting grounds for equitable relief, but on the other hand showed that if the complainant had any remedy against the defendant, it was enforceable at law, the demurrer incorporated in the answer should have been sustained.

For the reasons stated, the decree appealed from should be reversed with directions that the cause be dismissed without prejudice to the complainant to proceed, if she may, in a court of law to enforce her alleged claim. It is so ordered.

Reversed.

WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BROWN, J., not participating.