DANIEL S. PEARSON, Judge.
Airborne Freight Corporation is a nationwide company which ships air freight for overnight delivery. In conducting its business, Airborne relies substantially on excess space available in the cargo holds of scheduled commercial airline flights. When in 1979 the operations of United Airlines, one of the commercial carriers regularly utilized by Airborne, were temporarily halted by a machinists’ strike, Airborne was forced to secure substitute cargo space to meet its *922 needs. It turned to Fleming International Airways, Inc., a company which operated a fleet of four aircraft to carry air freight on a charter basis for various customers.
Representatives of Airborne and Fleming entered into a charter agreement, the substance of which is found in a series of telephonic communications followed by two confirming and clarifying telexes. On May 19, 1979, after Fleming’s services had been utilized for approximately six weeks, Airborne terminated the charter and this dispute arose. Fleming claimed that the agreement provided that (1) Airborne could not terminate until the United Airlines machinists’ strike was settled, which, according to Fleming, meant ratification by rank and file union members of the settlement between management and union officials, which did not occur until a week after Airborne’s termination; (2) Airborne was to pay $750 per stop for the ground service costs involved in the handling, loading and unloading of the cargo; (3) Airborne was to pay for the cost of “repositioning” Fleming’s aircraft, that is, the cost of placing the aircraft at the site where the charter began. Airborne countered that the agreement between the leaders of union and management settled the strike and allowed it to then terminate the charter with Fleming, that only actual ground service costs were to be paid to Fleming, and that there was no agreement whatever to pay for repositioning.
Fleming sued, seeking, inter alia, lost profits due to Airborne’s early termination of the charter, the difference between $750 per stop and the actual ground service costs, and the repositioning costs of the aircraft. The trial court, hearing the case without a jury, found for Fleming on these claims, reduced the total amount by miscellaneous credits due Airborne, and entered judgment for Fleming in the amount of $122,672.44, plus prejudgment interest of $18,707.56 at the statutory rate of six per cent for the entire amount of the judgment. Airborne appeals from the judgment, and Fleming cross-appeals from the trial court’s refusal to award damages for its cost of borrowing money at the prime lending rate. We affirm in part and reverse in part.
We find no error in the trial court’s finding that Airborne agreed to pay Fleming $750 per stop for ground service costs. As to this item, the evidence was in conflict. While it may be, as Airborne contends, that the sole evidence that $750 per stop was intended to be the fee paid Fleming for ground services was the uncorroborated testimony of Robert Fleming that there was an oral agreement under which Airborne was to pay only actual costs during the term of the charter, with the balance (the difference between $750 and the actual costs) to be paid upon its completion, that testimony, even if inconsistent with other conduct of Fleming International, and even if contradicted, was sufficient to permit the trial judge to find as he did. Mason v. Martino, 336 So.2d 396 (Fla. 3d DCA 1976). While we might not have made the same finding were we the trier of fact, we cannot substitute our judgment for his. Herzog v. Herzog, 346 So.2d 56 (Fla.1977); Atkins v. Keller, 400 So.2d 168 (Fla. 3d DCA 1981).
As to the other damage awards to Fleming, we are of another view. The award to Fleming of $44,710 for lost profits incurred because of the early termination of the charter agreement stands or falls on the trial court’s finding that Airborne could not terminate the agreement until the settlement of the machinists’ strike was ratified by the rank and file union members. The agreement itself, by everyone’s account, permitted Airborne to terminate when the strike was “settled.” The only participant in the charter negotiations who testified at trial stated that the understanding was that settlement referred to settlement between the representatives of the union and management. In this instance, the contrary testimony of Robert Fleming, who did not negotiate the charter and was not privy to what the parties intended, could not be received as parol evidence shedding light on the meaning of “settlement,” because his testimony was incompetent to prove that settlement meant ratification by rank and file union members. Gainesville Bonded *923 Warehouse v. Carter, 123 So.2d 336 (Fla.1960); King v. United States, 641 F.2d 253 (5th Cir.1981); § 90.604, Fla.Stat. (1981) (lack of personal knowledge). Thus, in this instance, there was no competent evidence to support the trial court’s finding that Airborne terminated the agreement prematurely and therefore no support for any award of lost profits.[1] Commercial Bank of Kendall v. Costley, 324 So.2d 182 (Fla. 3d DCA 1975).
The trial court also awarded Fleming $10,806.56 for “repositioning” of the aircraft because the charter agreement was “prematurely terminated.” To the extent that this award was dependent on the finding of premature termination, the award was unjustified for the reasons already stated. But there is yet another and more basic reason why these costs were not recoverable — that is, that Fleming undertook to pay all costs and fees other than those for which Airborne obligated itself, and it is undisputed that Airborne did not obligate itself to pay for “repositioning.”
Finally, we find Fleming’s cross-appeal to be utterly without merit.
Accordingly, we affirm the trial court’s award to Fleming of $54,088.66 for ground services; we reverse all other awards made in favor of Fleming and remand the case to the trial court for the purpose of recalculating the prejudgment interest and entering judgment in accordance with this opinion.
Affirmed in part; reversed in part.

. Our conclusion that there was no premature termination which would support an award for lost profits makes it unnecessary for us to separately address Airborne’s contentions that (1) Fleming’s showing of lost profits was insufficient, see International Equipment Co. v. Town Sandwich Shop, Inc., 369 So.2d 955 (Fla. 3d DCA 1978) (holding that plaintiff has the duty to prove actual damages); and (2) prejudgment interest could not be awarded for lost profits which were unliquidated and which were capable of calculation only on the basis of conflicting evidence, see Broward County v. Sattler, 400 So.2d 1031 (Fla. 4th DCA 1981); Town of Longboat Key v. Carl E. Widell & Son, 362 So.2d 719 (Fla. 2d DCA 1978).