FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Alliance Federal Savings and Loan Association

v.

William A. HSI, Victor Hsi, and Arthur Hsi.

Civ. A. No. 85–5915.

United States District Court, E.D. Louisiana.

Aug. 29, 1986.

Nathan T. Gisclair, Jr., New Orleans, La., for plaintiff.

James A. Wysocki, New Orleans, La., for defendant.

LIVAUDAIS, District Judge.

The Federal Savings and Loan Insurance Corporation (FSLIC) brings this action to enforce four promissory notes, and to be declared pledgee of certain securities pledged by the defendants as security for the notes. Presently before the Court is the plaintiff's motion for partial summary judgment for the principal balances due on the notes. Now, after a review of the briefs submitted by the parties, the record, and the law, I find that the plaintiff's motion must be GRANTED.

## FACTS

The plaintiff FSLIC brings this action pursuant to its statutory authority to receive and administer assets of failed savings and loan institutions. 12 U.S.C. § 1729(b). In this case, it acts as receiver for Alliance Federal Savings and Loan Association (Alliance), a failed local savings and loan.

The defendants are a business man and his two sons, who executed a series of four promissory notes to Alliance in exchange for sizeable loans. The loans were secured by stock the defendants acquired and held in Golden Coin Savings and Loan (Golden Coin), and were guaranteed by an organization called First Houston Trust Capital Resources Fund Limited (First Houston). The Golden Coin stock is that which the FSLIC seeks to be declared the pledgee of, and the defendants allege that the FSLIC should now look to First Houston for payment of the notes rather than them.

The circumstances surrounding the making of the notes are those relevant to the present motion. They suggest the banking equivalent of a Mickey Spillane novel: a seamy atmosphere in which everyone looks out for himself, and someone is sure to get clubbed in the head.

In May of 1984, William Hsi began to look into the possibility of buying stock in Golden Coin. He hoped to gain a controlling interest in Golden Coin, and elect himself Chairman of the Board. Hsi hoped that he would be able to make Golden Coin profitable, even though he had no previous experience as a banker.

During the negotiations, Hsi dealt with Mr. Hiram Woo, the major shareholder and CEO of Golden Coin. Woo advised Hsi not to contact other persons associated with Golden Coin during the negotiations because to do so might sour the deal. Apparently, Woo did not want Hsi to discover that one of the other persons associated with Golden Coin was FSLIC, which had entered cease and desist orders against Golden Coin and which was participating in the management of the bank by virtue of certain supervisory agreements. In spite of this, Woo represented that Golden Coin

was in good financial condition throughout the negotiations.

In order to finance the purchase of Golden Coin stock, Hsi contacted a money broker, Bob Poindexter, who recommended that he contact Sonny Decker. Decker was then the Vice President and Chief Loan Officer of Alliance. Through him, Alliance expressed interest in financing Mr. Hsi's purchase of stock in Golden Coin. However, Alliance refused to give Mr. Hsi the loan he sought without the added credit of a guarantor. It suggested that First Houston, which had been involved in other transactions with Alliance, would be happy to act as guarantor for Mr. Hsi's loan.

First Houston did agree to guarantee the loan. But it charged the Hsis $110,000 to do so. There is nothing in the guaranty agreement to suggest First Houston acted as anything but a simple guarantor. In fact, it endorsed the notes without any reservation.

During the time he was negotiating with Alliance, Mr. Hsi dealt with Mr. Guy Olano, who was then chairman of the board at Alliance. He represented to Hsi that Alliance was substantial and solvent. Like Mr. Woo before him, Mr. Olano did not tell the plaintiff that the company he managed was having serious regulatory problems. Mr. Olano also failed to tell the plaintiff that he himself had been negotiating for the purchase of Golden Coin as recently as September of 1983.

As a condition to the loans sought by Hsi, Mr. Olano required that escrow close quickly. Mr. Hsi and his sons executed the escrow instructions on July 19, 1984, and escrow closed on or about August 2, 1984. Mr. Hsi claims that this period left him too little time to investigate Alliance, First Houston, and Golden Coin fully.

As a second condition to the loans, Alliance required that Mr. Woo deposit in escrow a proxy for 51% of Golden Coin's stock, to ensure that Mr. Hsi would be elected to the board of Golden Coin. Mr. Woo agreed to do so, and he did deposit such a proxy with the escrow agent. But he asked that the proxy be returned to him some time after it had been deposited.

There are restrictions on the amount of stock which a person may purchase without regulatory approval. Apparently, a person may only purchase 25% of a federally regulated savings and loan without the prior approval of the Federal Home Loan Bank. The Hsis aver that they were unaware that such restrictions existed, and that they were not told of this by any other party to the Golden Coin deal.

On August 2, 1984, escrow closed, and the Hsis became the owners of 51% of the stock of Golden Coin, which they had pledged to Alliance to secure their loan. Soon thereafter, the Federal Home Loan Bank informed them that they could not legally own the stock they had purchased without regulatory approval. And soon after that, the Hsis learned that Golden Coin and Alliance were in regulatory trouble. They learned the hard way in the case of Alliance: pursuant to its statutory authority, the FSLIC paid its insurance to Alliance's depositors, and acquired Alliance's assets. It then took Alliance into receivership, and later, commenced this suit.

ISSUES

The plaintiff moves for summary judgment on two grounds. It argues that it is a holder in due course of the notes given by the defendants, and that it took the notes free of any of the defenses the defendants raise. In the alternative, it argues that even if it is not a holder in due course, it is entitled to summarily enforce the notes as a matter of federal common law as it has developed from *D'Oench, Duhme & Co. v. Federal Insurance Deposit Ins. Corp.*, 315 U.S. 830, 62 S.Ct. 910, 86 L.Ed. 1224 (1942).

The defendants respond to the plaintiff's motion by arguing that it is not a holder in due course. They argue that the persons with whom they dealt committed fraud in the inducement by failing to inform them of the weak financial condition of Alliance and Golden Coin, and that they were assured by the defendants that the notes would be rolled over when they came due. They claim that the plaintiff's lack of holder in due course status makes these defenses viable ones to the present motion, and

that these defenses are sufficient to escape summary judgment under the *D'Oench* case and its progeny.

DISCUSSION

Summary judgment may be granted only if it appears from pleadings, depositions, admissions and affidavits, considered in the light most favorable to the non-moving party, that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *United States v. An Article of Drug,* 725 F.2d 976, 984 (5th Cir.1984); *Galindo v. Precision American Corp.,* 754 F.2d 1212 (5th Cir.1985). Summary judgment is appropriate when in the absence of factual disputes, one or more of the essential elements of a claim or defense before the court is not in doubt and judgment may be entered on the basis of purely legal considerations. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). In deciding a motion for summary judgment, the court must treat the motion critically, and review the record for genuine factual issues (even when the motion is unopposed), to ensure that the moving party has carried its burden of proving that none exist. *John v. State of Louisiana (Bd. of T. for State C. & U.),* 757 F.2d 698, 709 (5th Cir.1985); *Hibernia National Bank v. Administration Central Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985); *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir.1986). With these principles in mind, I now consider the motion before me.

### 1. The Holder in Due Course Rule

The FSLIC's rights as the holder of the notes given by the Hsis are defined by the Louisiana version of the Uniform Commercial Code for commercial paper, Title 10 of the Louisiana Revised Statutes, Sections 1—101 *et seq.* The rights of holders of commercial paper are defined at LSA—R.S. 10:3—301 *et seq.* The holder in due course rule is the familiar one, and is found at LSA—R.S. 10:3—302, which reads:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(2) A payee may be a holder in due course.

(3) A holder does not become a holder in due course of an instrument:

(a) by purchase of it at judicial sale or by taking it under legal process; or

(b) by acquiring it in taking over an estate; or

(c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

(4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased.

Holders in due course have the rights provided by LSA—R.S. 10:3—305:

To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the party of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) minority, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders such obligation an absolute nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument.

Plainly, if the FSLIC is a holder in due course, it took free of the defense alleged by the Hsis (i.e. fraud in the inducement), and is entitled to summary judgment.

 I find that the FSLIC is not a holder in due course, however. In this case, the FSLIC acquired the notes by, in

effect, purchasing them in bulk with the other assets of Alliance at the time Alliance went into receivership.[1] Those who acquire paper by such purchases are specifically exempted from holder in due course status. LSA—R.S. 10:3—302. Every case to consider the issue has so found, ruling that when the FDIC (a federal agency that regulates banks as the FSLIC regulates savings and loans) acquires a failed bank's assets through receivership, it does not acquire holder in due course status. *Gunter v. Hutcheson,* 674 F.2d 862, 872 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Federal Deposit Ins. Corp. v. Rockelman,* 460 F.Supp. 999, 1002 (E.D.Wis.1978); *Federal Deposit Ins. Corp. v. Vestring,* 620 F.Supp. 1271 (D.C. Kan.1985). For this reason, I find that the Hsi's defenses of fraud in the inducement and misrepresentation raise a material issue of fact sufficient to withstand the FSLIC's motion insofar as it is based on the erroneous assumption that the FSLIC is a holder in due course of the notes. The FSLIC is simply an ordinary note holder in this case, and the defenses raised here by affidavit present an issue of fact for trial.

### 2. The D'Oench Doctrine

The D'Oench doctrine is a principle of federal common law that derives from *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), in which the Supreme Court found "a federal policy [under the National Banking Act] to protect [the FDIC], and public funds it administers, against misrepresentation as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench, supra,* at 457, 62 S.Ct. at 679. It is a rule of estoppel, and prevents those who give notes to federally insured banks from raising defenses based on alleged secret agreements they had with the officers of failed banks with regard to the enforceability of promissory notes. *D'Oench,* at 460, 62 S.Ct. at 680–81. It reaches all those who "lend" themselves to

secret agreements with banks, and requires that "a person who, for the accommodation of the bank, executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced." *D'Oench,* at 459, 62 S.Ct. at 680.

■ This principle has been codified at 12 U.S.C. § 1823(e), a section of the FDIC statute, which reads in relevant part:

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

This statute has been read broadly. The Courts have construed it to include agreements made by defendants in good faith, and, in some cases, agreements obtained by the fraud of bank officers. *See, e.g., Federal Deposit Ins. Corp. v. Lattimore Land Corp.,* 656 F.2d 139, 142 (5th Cir.1981); *Chatham Ventures, Inc. v. Federal Deposit Ins. Corp.,* 651 F.2d 355 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982).

In addition, some cases have held that the *D'Oench* doctrine itself bars any allegations of fraud or bad faith as defenses to the FDIC's enforcement of a promissory note. *See Federal Deposit Ins. Corp. v. Investors Associates X,* 775 F.2d 152, 154–6 (6th Cir.1985); *Federal Deposit Ins.*

---

1. For an excellent description of the way the FSLIC and FDIC operate, see *Gunter v. Hutche-* son, 674 F.2d 862, at 865–866.

*Corp. v. Vestring,* 620 F.Supp. 1271, 1274 (D.C.Kan.1985). And one case, which held that 12 U.S.C. § 1823(e) and the *D'Oench* doctrine did not apply where the defendants had been defrauded by the bank in giving their note (on the ground that *D'Oench* requires fault on the part of the maker, and no "agreement" of the kind required by § 1823(e) is present in cases of fraud), went so far as to hold that federal common law compelled the conclusion that the defendants' allegations of fraud in the inducement are insufficient to block the FDIC's enforcement of a note. *Gunter v. Hutcheson,* 674 F.2d 862, 867, 872 n. 14, 873 (11th Cir.1982).

Of course, § 1823(e) is not binding here even though the common law of *D'Oench* is. *See FSLIC v. Kearney Trust Co.,* 151 F.2d 720, 725 (8th Cir.1945); *FSLIC v. Elliott, et al.,* No. 83–1803, slip op. at 4 (N.D.Ill. March 8, 1985) [Available on WESTLAW DCT database]. By its terms, the statute only applies to the FDIC. But the cases decided under the statute are persuasive authority in this case, because they indicate the likely direction of the *D'Oench* doctrine in the Fifth Circuit. That is, they indicate the direction the Fifth Circuit would take in its interpretations of *D'Oench* by indicating the direction it *has taken* in interpreting *D'Oench's* statutory counterpart.

 There is no recent authority in the Fifth Circuit deciding the reach of the *D'Oench* doctrine in the absence of § 1823(e). *See Federal Deposit Ins. Corp. v. Castle,* 781 F.2d 1101, 1106 (5th Cir.1986) (a § 1823(e) case). But I am confident that the Fifth Circuit would read *D'Oench* broadly in the absence of § 1823(e), interpreting its reach in the manner of *Investors Associates X* and *Vestring.* Those cases best reflect the policy concerns expressed by *D'Oench.* Both recognize that federal banking authorities must be able to enforce notes in accordance with their written terms, even in the face of wrongdoing by a failed bank, in order to ensure the smooth administration of bank insurance

and avoid panic. *Investors Associates X,* at 154; *Vestring,* at 1273–74. I find that *D'Oench* estoppel must extend to cases in which defendants assert defenses of fraud in the inducement by a failed bank against the FSLIC when it seeks to enforce the promissory notes of failed savings and loan associations.[2]

Applying these principles to the case before me, I find that the defenses alleged by the Hsis are not sufficient to raise an issue of material fact for trial. The Hsis argue that *D'Oench* estoppel should not apply to them because it does not apply to the FSLIC, that Alliance secretly agreed to roll the notes in question over at the due date, and that they were the victims of fraud, which falls outside the reach of *D'Oench.*

But the *Kearney* and *Elliott* cases cited above apply *D'Oench* to enforcement actions by the FSLIC, and my research discloses no case to the contrary, nor any reason to rule differently. Accordingly, following *Kearney* and *Elliott,* I rule that *D'Oench* applies to the actions of the FSLIC in this case.

This being the case, Alliance's alleged agreement to extend the terms of the notes falls squarely within *D'Oench,* and so, even though the Hsis did offer affidavits to prove the alleged agreement, such proof would not be material because it is no defense. *See D'Oench,* 62 S.Ct. at 679. The same is true of the Hsi's allegations of fraud; I ruled above that allegations of that kind were within *D'Oench,* and present no viable defense to the FSLIC's enforcement of a note.

CONCLUSION

The events as described in the materials submitted by the defendants are tragic. Apparently, the Hsis were the victims of several unscrupulous people, who used their relative inexperience in the financial world to defraud them. But the banking policy of the United States as manifested in *D'Oench* and its progeny is clear: those who deal with banks must bear the risk of

---

2. In the alternative, I find that the defenses pled would be insufficient as a matter of federal

common law for the reasons stated in *Gunter, supra.*

transactions that would tend to defeat the rights of deposit insurors like the FSLIC.

Let summary judgment be entered in favor of the plaintiff.

