**In re UNIVERSITY DRIVE PROFESSIONAL COMPLEX, INC., Debtor.**

**UNIVERSITY DRIVE PROFESSIONAL COMPLEX, INC., and Warren Martin, Trustee, Plaintiffs,**

**v.**

**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver for Sunrise Savings and Loan Association, et al., Defendants.**

**Bankruptcy No. 88–00224–BKC–AJC. Adv. No. 88–0100–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

April 20, 1989.

Valerie A. Jahn, Squire, Sanders & Dempsey, Miami, Fla., for FSLIC.

Stewart P. Chambers, Faircloth & Chambers, P.A., Arthur Neiwirth, Ft. Lauderdale, Fla., Kevin Gleason, Asst. U.S. Trustee, Miami, Fla., Warren Martin, Trustee, Hollywood, Fla., Jeffrey Beck, Ruden, Barnett, McClosky, Smith, Schuster & Russell, Ft. Lauderdale, Fla., Alexander D. Varkas, Jr., Law Offices of Robert A. Sweetapple, P.A., Miami, Fla., for Professional Custom Painting, Inc.

Mark A. Greenberg, Siegfried, Kipnis, Rivera, Lerner & Delatorre, Coral Gables, Fla., for Fire Sprinklers and Total Fire Sprinklers, Inc.

## MEMORANDUM DECISION GRANTING FSLIC'S MOTION FOR SUMMARY FINAL JUDGMENT

A. JAY CRISTOL, Bankruptcy Judge.

THIS MATTER having come before the Court on March 6, 1989 at 10:30 a.m., and the Court having reviewed the pleadings, and affidavits on file and the documents presented by the Plaintiff, UNIVERSITY DRIVE PROFESSIONAL COMPLEX, INC., and having heard argument of counsel, and being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED as follows:

The FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION as Receiver for Sunrise Savings and Loan Association's ("FSLIC as Receiver") Motion for Summary Judgment proffers several grounds

upon which this Court could rely in granting Summary Final Judgment. Therefore, each argument shall be addressed separately herein.

## UNDISPUTED FACTS

On August 5, 1983, UNIVERSITY DRIVE PROFESSIONAL COMPLEX, INC., a Florida corporation and Plaintiff herein ("UDPC") executed and delivered a promissory note in the principal amount of $1,500,000.00 (the "Note") to Sunrise Savings and Loan Association of Florida ("Old Sunrise") and further executed and delivered a mortgage securing payment of the Note to Old Sunrise (the "Mortgage"). The Mortgage encumbered Coral Springs Sunrise Tower, a 10–story office building in Broward County, Florida. In addition to executing the Note and Mortgage, UDPC executed and delivered other loan documents, including a Proceeds Agreement.

On January 12, 1984, UDPC executed and delivered a second note and mortgage in favor of Old Sunrise (the "Second Note" and "Second Mortgage"). The Second Note was in the principal amount of $19,-230,000.00. The Second Mortgage also encumbered the Property. Also on January 12, 1984, the Note and Mortgage were modified by a Note and Mortgage Modification and Consolidation Agreement which consolidated the Mortgage and Second Mortgage and modified the Note. ("Hereafter the Note and Second Note will sometimes be referred to collectively as the "Notes" and the Mortgage and Second Mortgage will sometimes be referred to collectively as the "Consolidated Mortgage.")

On July 18, 1985, the Federal Savings and Loan Insurance Corporation ("FSLIC") was appointed by the Federal Home Loan Bank Board ("FHLBB") as sole receiver for Old Sunrise pursuant to Resolution 85–582 of the FHLBB. The FSLIC took possession of Old Sunrise on July 18, 1985 and succeeded to all the rights, title, powers and privileges of Old Sunrise.

On July 18, 1985, FSLIC transferred substantially all of the assets and liabilities of Old Sunrise to Sunrise Savings and Loan Association, a Federal Savings and Loan Association ("New Sunrise"), which continued the business of Old Sunrise.

On May 20, 1986, UDPC executed a Future Advance Promissory Note together with a Notice of Future Advance and also executed a Note and Mortgage and Loan Document Modification Agreement, all of which provided for the additional advance of $650,000.00 to be secured by the above-referenced Consolidated Mortgage and clearly established the relationship between UDPC and New Sunrise as that of Borrower and Lender.

On Friday, September 12, 1986, the FHLBB pursuant to Resolution 86–982 appointed FSLIC as sole receiver for New Sunrise. FSLIC as Receiver for New Sunrise pursuant to 12 C.F.R. § 547.7 took possession of New Sunrise and succeeded to all rights, titles, powers and privileges of New Sunrise.

On August 20, 1986, UDPC defaulted on its obligations to New Sunrise and FSLIC as Receiver for New Sunrise and FSLIC as Receiver commenced a lawsuit to foreclose the Consolidated Mortgage as modified and collect the indebtedness represented by the Notes, as modified, which complaint was filed June 4, 1987 in the Nineteenth Judicial Circuit (the "State Court Action").

In the State Court Action, UPDC and the guarantors, Edward Haas and James Laughlin, filed an Answer and Affirmative Defenses ("the Answer"). Pursuant to a motion by the FSLIC as Receiver, a receiver was appointed in the State Court Action.

On January 22, 1988, UDPC filed for protection under Chapter 11 of the Bankruptcy Code. This Court granted FSLIC as Receiver's motion for relief from stay and thereafter, FSLIC as Receiver filed a motion for summary judgment in the State Court Action. A hearing was held on the Motion for Summary Judgment on March 2, 1988.

The state court granted the Motion for Summary Judgment, and entered a Final Judgment of Foreclosure in accordance with its March 17, 1988 Memorandum Decision. In its Memorandum Decision the state court specifically rejected UDPC's ar-

guments that Old Sunrise was a joint venturer with UDPC and further rejected UDPC's arguments that New Sunrise and FSLIC as Receiver (a) knew of this relationship and (b) conducted themselves in such a manner so as to be precluded from seeking the relief requested in the State Court Action:

"This court has carefully considered the affirmative defenses raised and counterclaim asserted by the Defendants and heard argument of counsel in support of those defenses and counterclaim. Those defenses and counterclaim must fail, as a matter of law, because those defenses and counterclaim are based upon parol evidence which would necessarily vary, contradict or modify the clear and unambiguous language of the loan documents. The defenses are insufficient as a matter of law under the parol evidence rule. *See e.g., Central Bank & Trust Co. v. Diaz*, 442 So.2d 1005 (Fla. 3d DCA 1983); *General Motors Acceptance Corp. v. Marlar*, 761 F.2d 1517 (11th Cir.1985). The affirmative defenses and counterclaim asserted by Defendants are legally insufficient, and must fail, under the theory enunciated in *D'Oench, Duhme & Co. v. FDIC*, 325 [315] U.S. 447 [62 S.Ct. 676, 86 L.Ed. 956] (1941), and as recently addressed in *FDIC v. Langley*, 56 U.S. L.W. 4026 [484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340] (December 1, 1987), an alleged oral modification or alleged oral agreement with respect to the terms of loan documents is not a valid defense in an action prosecuted by the FSLIC, as receiver for a failed savings and loan association."

Warren Martin, as Bankruptcy Trustee of UDPC filed a Motion for Rehearing in the State Court Action, which motion was denied on April 11, 1988.

### I. *This Court has Subject Matter Jurisdiction*

FSLIC as Receiver has renewed its argument that this Court lacks jurisdiction to consider this matter pursuant to the decision in *North Mississippi Savings & Loan Association v. Hudspeth*, 756 F.2d 1096 (5th Cir.1985) *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1985).

The Court is cognizant of the recent U.S. Supreme Court decision in *Coit Independence Joint Venture v. FSLIC, as Receiver of Firstsouth, F.A.*, —— U.S. ——, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989). This brand new opinion confirms the Court's own belief that the Seventh Circuit's decision in *Morrison–Knudsen Co. v. CHG International, Inc.*, 811 F.2d 1209 (9th Cir. 1987) is more persuasive. Therefore, the motion must again be denied on this basis.

### II. *Plaintiff's Action is Barred By the Doctrines of Res Judicata and Collateral Estoppel*

■ FSLIC as Receiver next argues that the instant adversary proceeding attempts to reassert the allegations of UDPC's answer, affirmative defenses and counterclaim from the State Court Action filed by the FSLIC prior to UDPC's Chapter 11 petition, and is therefore barred by the doctrines of *res judicata* and/or collateral estoppel.

Pursuant to the Full Faith and Credit Clause codified in 28 U.S.C. § 1738, in determining whether *res judicata* or collateral estoppel applies, this Court must apply the law of the State of Florida. "It is now settled that a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See Casines v. Murcheck*, 766 F.2d 1494 (11th Cir.1985); *Acquisition Corp. of America v. The Federal Savings and Loan Insurance Corporation*, Case No. 87–04707–BKC–AJC (Nov. 4, 1988).

The doctrines of *res judicata* and collateral estoppel, although different, are closely related. The Florida Supreme Court has recently addressed the elements which must be present to find either *res judicata* or collateral estoppel.

Where the second suit is upon the same cause of action and between the same

parties as the first, *res judicata* applies. The first judgment is conclusive as to all matters which were or could have been determined ... It has been well settled by this Court that several conditions must occur simultaneously if a matter is to be made *res judicata:* identity of the thing sued for; identity of the cause of action; identity of parties; identity of the quality in the person for or against whom the claim is made ... [W]hen the second suit is between the same parties, but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined in it ... [I]f the cause of action is not the same there will be no estoppel as to those issues which *could* have been litigated in the previous action. The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions....

*Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984) (citations omitted).

The Court finds it is clear that the parties in the State Court Action, and in this proceeding are identical as both actions are between UDPC and FSLIC as Receiver and the other named defendants herein who are inferior lien claimants.

Second, it is clear that the cause of action in each of the actions is the same because the facts and evidence necessary to maintain UDPC's position herein are the same as those facts necessary to maintain UDPC's position in the State Court Action. *City of Miami Beach v. Prevatt,* 97 So.2d 473 (Fla.1957), *cert. denied,* 355 U.S. 957, 78 S.Ct. 543, 2 L.Ed.2d 532 (1958). In the State Court Action, UDPC raised as its defense to the Complaint and to the entry of the Final Summary Judgment the existence of the alleged joint venture and FSLIC's conduct in accordance therewith. These allegations were rejected by the state court and an order was entered against UDPC.

Further, the identity of the thing sued for is identical in both the State Court Action and the instant proceeding. In both actions UDPC is seeking relief from the Notes and Mortgages as modified by alleging joint venture and misconduct by FSLIC as Receiver and Old Sunrise. In the present case, UDPC attempts relitigation of the same cause of action by using the facts as a sword rather than a shield.

It is not relevant in determining whether either *res judicata* and collateral estoppel apply that the State Court Action was a foreclosure action wherein the instant Amended Complaint seeks to determine the extent of the claim and the subordination thereof. In *Simco Operating Corp. v. City National Bank of Miami Beach,* 341 So.2d 232 (Fla. 3d DCA 1976), *cert denied,* 348 So.2d 952 (1977), the court held that a litigant was estopped from filing a complaint alleging fraud in the inducement of purchasing property, where the exact issue was raised by the litigant as a defense to a prior foreclosure action in which the lender foreclosed out the litigant's interest in the property. *See Hay v. Salisbury,* 92 Fla. 446, 109 So. 617 (1926) (prior action by defendant against plaintiff to quiet title involved the same facts raised by plaintiff against defendant in instant action for specific performance of contract for sale of property. Therefore, plaintiff was barred by *res judicata* from pursuing the requested relief).

Accordingly, because the parties in the instant case are identical to the parties in the State Court Action, because the cause of action is the same, and because the identity of the thing sued for is also identical, the FSLIC is entitled to a Summary Final Judgment in its favor on the grounds of *res judicata.*

III. *There is no Admissable Evidence That FSLIC was Either a Joint Venturer or Committed Any Misconduct*

a. Parole Evidence Cannot be Used to Establish a Joint Venture Relationship

■ The Court has already reviewed all admissible evidence and finds there to be no genuine issue of material fact remaining

to be tried. UDPC may not use parole evidence to contradict the clear and unambiguous terms of the Notes.

Under Florida law, evidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. *e.g., Anderson v. Tradewinds Enterprises Corp.*, 241 So.2d 174, 177 (Fla.Dist.Ct. App.1970); *cert denied*, 244 So.2d 432 (Fla.1971); *Wise v. Quina*, 174 So.2d 590, 596 (Fla.Dist.Ct.App.1965).

*Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 (11th Cir.1983). *See also, Airborne Freight Corp. v. Fleming International Airways, Inc.*, 423 So.2d 921 (Fla. 3rd DCA 1982), *rev. dism'd*, 430 So.2d 450 (1983); *Ketchian v. Concannon*, 435 So.2d 394 (Fla. 5th DCA 1983); *Margolis v. City National Bank*, 436 So.2d 438 (Fla. 4th DCA 1983); *Shell Development Corp. v. Ann Ford, Inc.*, 443 So.2d 409 (Fla. 4th DCA 1984).

This Court's review of the documents from the various loan transactions reveals that the terms of all the documents executed by UDPC clearly state that the relationship between UDPC and Old Sunrise and New Sunrise was strictly that of borrower/lender and further that nothing in the loan was intended to create a joint venture between the parties. *See* paragraphs 6 and 8 of the Proceeds Agreement dated August 5, 1983.

*No Joint Venture.* Nothing contained herein shall be construed as creating a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Lender and Borrower. Lender and Borrower intend the relationship created under the Loan and hereunder to be that of debtor and creditor. It is understood and agreed that so long as there is no default in the Note and Mortgage, Lender shall have no control over the management and operation of the Property. Further, Lender shall have no obligation to contribute to any losses which the Borrower may suffer as a result of its ownership and operation of the Property by virtue of this Assignment of Profits.

*Borrower's Liabilities.* Lender, by its acceptance hereof, does not become a member or partner of, or with, the borrowing entity, and in no event shall Lender be liable for any of the debts, obligations, or liabilities of the Borrower, or the partnership thereof, nor is Lender liable for any contributions to the Borrower. Lender's only interest in the Borrower shall be Lender's right to receive the Profits Interest.

Also see Paragraph 5 of the Notice of Future Advance, dated May 20, 1986 which provides in pertinent part: "Mortgagor hereby acknowledges that the relationship between Mortgagor and Mortgagee is strictly that of lender/borrower and is not and has never been a joint venture, partnership or other form of business relationship."

UDPC has not presented any documents which contradict the clear language of the Notes and supporting documents and clear statement by UDPC in the Future Advance Note and Notice that no joint venture ever had existed between the parties.

Furthermore, the allegations in the Amended Complaint regarding the alleged misconduct of New Sunrise and FSLIC as Receiver are based on alleged oral modifications to the Notes, none of which are reflected in any of the Notes or Mortgages or pertinent loan files. *See* Affidavit of Arnason, Exhibit "O" to FSLIC as Receiver's Summary Judgment motion.

Finally, subsequent to the time the loan documents were executed neither Old Sunrise nor New Sunrise acted inconsistently with the relationship evidenced and confirmed in the loan documents or the terms of the loan set forth therein. The loan was treated as such on the books of the institution and was at all times recorded for servicing consistent with the terms of the Notes. *See* Arnason Affidavit. When the loan went into default a foreclosure action was commenced. As the Notes are unambiguous, UDPC's attempt to use parole evidence is unacceptable.

b. Any Argument Predicated on Alleged Oral Agreements is Barred By The D'Oench Duhme Doctrine

■ UDPC cannot validly allege an oral modification of the Notes by virtue of the

doctrine first enunciated by the United States Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941) and its progeny, which doctrine has been applied to the FSLIC in numerous cases: *e.g., Bailey v. Metro Federal Savings & Loan Ass'n v. Lake Charles*, 642 F.Supp. 616, 618, 622, n. 5 (W.D.La.1986) and other cases discussed below.

In *D'Oench, supra*, the Federal Deposit Insurance Corporation ("FDIC") sought to enforce the terms of a promissory note, to which the makers asserted the defense of failure of consideration and a collateral agreement with the failed bank's officers that no demand would ever be made on the note. Finding that federal law applied under the Federal Reserve Act, 12 U.S.C. § 264(s) and 12 U.S.C. § 264(y), the Court concluded that federal policy "protects [the FDIC] and the public funds it administers against misrepresentations as to the securities or other assets in the portfolios of the bank which it insures or to which it makes loans," and barred the debtors from asserting their defenses. *D'Oench*, at 457. The court held that a debtor who lends himself to a scheme or arrangement that would tend to mislead bank examiners cannot raise any terms or conditions of that scheme or arrangement as a defense against the FDIC in a suit on the note and explained:

> If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible.

315 U.S. at 461, 62 S.Ct. at 681.

The holding in *D'Oench*, as applicable to the FDIC, was subsequently codified by Congress in 12 U.S.C. § 1823(e). Although Section 1823(e), by its own terms, only applies to the FDIC, the *D'Oench* doctrine nevertheless survives as an independent basis for protecting both the FDIC and the FSLIC. *Bailey v. Metro Federal Savings & Loan Ass'n v. Lake Charles*, 642

F.Supp. 616, 618, 622 n. 5 (W.D.La.1986); *FSLIC v. Kearney Trust Co.*, 151 F.2d 720, 725 (8th Cir.1945); *FSLIC v. White*, No. 86–2143–CIV–SCOTT (S.D.Fla. Mar. 23, 1987); *FSLIC v. Hsi*, 657 F.Supp. 1333 (E.D.La.1986); *FSLIC v. 3–Way Investment*, No. 85–4323, 1986 WL 20433 (E.D.La. Sept. 18, 1986); *FSLIC v. D & D Partnership*, No. 85–5790, 1986 WL 11755 (E.D.La. Oct. 4, 1986); *FSLIC v. Elliott*, No. 8–C–1803, 1985 WL 1539 (N.D.Ill. Mar. 8, 1985). The court in *FSLIC v. Elliott, supra*, at p. 6 of slip opinion explained:

> *D'Oench* has long been applied to cases in which the FSLIC is a party. Like the FDIC, the FSLIC insures the accounts of member institutions, 12 U.S.C. § 1726(a). Like the FDIC, the FSLIC can liquidate or arrange a purchase and assumption transaction where a member institution runs into serious difficulties, 12 U.S.C. § 1729. Like the FDIC, "any civil action, suit or proceeding to which the [FSLIC] shall be a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1730(k)(1)(B). Thus, federal common law is the substantive law to be applied. . . .

Thus, *D'Oench, supra*, and its progeny apply with equal force to the FSLIC. This view was recently validated by the United States Supreme Court which referred back to the original *D'Oench* decision to interpret Congressional intent in Section 1823(e). *Langley v. Federal Deposit Ins. Co.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

The *D'Oench* doctrine is a rule of estoppel which prevents those who give notes to federally insured institutions from raising defenses based on alleged oral agreements that they had with the officers of failed banks with regard to enforceability of promissory notes. It reaches all those who lend themselves to oral agreements with these institutions and applies notwithstanding an allegation of fraud by a co-participant in the scheme. *Langley, supra*. The doctrine not only encourages debtors to insist that all loan terms be recorded in bank records, but reflects the equitable principle that, if a loss is to be incurred as

a result of an unrecorded arrangement, the loss should not fall on the deposit insurer and its depositors, but on the person who could have avoided the loss, the person who lent himself to the side arrangement.

The *D'Oench* doctrine and its statutory codification in 12 U.S.C. § 1823(e) have been extended beyond the limited situation in which the lender and borrower secretly agree that an obligation will not be enforced; they have been used to bar nearly every defense by the maker of a note against the FDIC and the FSLIC, including fraud in the inducement, securities fraud, failure of consideration, usury and estoppel. *See FDIC v. McClanahan*, 795 F.2d 512 (5th Cir.1986); *FDIC v. Investors Associates X, Ltd.*, 775 F.2d 152 (6th Cir.1985); *FDIC v. Van Laanen*, 769 F.2d 666 (10th Cir.1985); *FDIC v. First National Finance Company*, 587 F.2d 1009 (9th Cir. 1978); *Lupin v. FSLIC*, No. 85–5896, 86–1126 (consolidated), 1987 WL 9106 (E.D.La. Mar. 31, 1987); *FDIC v. Vestring*, 620 F.Supp. 1271 (D.Kan.1985). Generally, the *D'Oench* doctrine applies to bar defenses which emanate from statements that have the effect of misinforming the deposit insurer. *See FDIC v. Langley*, 792 F.2d 541, 546 (5th Cir.1986), *aff'd*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

Moreover, *"D'Oench* estops the maker of a note from asserting *any* defense arising out of [a] fraudulent scheme, including representations made by another participant in the scheme." *FDIC v. Associates X, Ltd.*, 775 F.2d at 156 (emphasis supplied). As the court pointed out in *Hsi, supra*, fraud by the lending institution does not alter the fact of knowing participation in the misleading arrangement:

... federal banking authorities must be able to enforce notes in accordance with their written terms, even in the face of wrongdoing by a failed bank, in order to ensure the smooth administration of bank insurance and avoid panic. I find that *D'Oench* estoppel must extend to cases in which defendants assert defenses of fraud in the inducement by a failed bank against the FSLIC when it seeks to enforce the promissory notes of failed savings and loan associations.

*Hsi, supra.* Again, the court's view was validated by the Supreme Court in the recent *Langley* decision which held that fraud in the inducement is not a defense.

The reason for prohibiting defenses arising from fraudulent schemes was explained in *FDIC v. Castle*, 781 F.2d 1101 (5th Cir. 1986), where the court held that the defendants were precluded from asserting that guarantee forms were not completed according to an oral agreement. Quoting *FDIC v. Hatmaker*, 756 F.2d 34 (6th Cir. 1985), the court said:

The purpose is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle a bank's insolvency. The current concern is thus with *agreements that are not made part of the note.* That such an agreement might have been fraudulently induced is immaterial; what is important is that the borrower voluntarily entered into such a side agreement.... That the side agreement may have been breached is inconsequential.

(Emphasis added.)

781 F.2d at 1107.

This rule is not altered by the existence of a written agreement that is not referenced in the note or the lender's records. Section 1823(e), as applied to the FDIC, specifically requires that the agreement be referenced and its existence be affirmatively or directly acknowledged by the bank's board of directors or loan committee. This requirement applies to the FSLIC, as well as the FDIC. For example, in *Lupin, supra*, FSLIC brought a motion for summary judgment dismissing or striking defendants' affirmative defenses and counterclaims of fraud, misrepresentation and violation of the federal and state security laws pursuant to the *D'Oench* doctrine. Defendants contended that *D'Oench* was not applicable because of a written partnership agreement allegedly altering the terms of

the note. The court rejected defendants' argument and wrote:

Although not secret the partnership agreement was a separate collateral agreement by which the FSLIC is not bound when it purchases bank loans and loan documents. "The policy supporting FDIC protection in a collateral agreement situation applies equally to all situations in which the maker's defense is based on something, representations or conduct, outside the note itself." *Federal Deposit Ins. Corp. v. MM & S Partners*, 626 F.Supp. 681 at p. 687 (N.D.Ill. 1985). The FSLIC is seeking to enforce a facially valid note and mortgage imposing a collateral obligation on the maker to pay a sum certain amount to the bank. *There is no mention of the partnership agreement in either the note or the mortgage.* (emphasis supplied)

*Lupin, supra, slip op.* at 3.

This Court has applied the *D'Oench* doctrine to a FSLIC matter in a bankruptcy proceeding. *FSLIC v. Shell Erectors of Florida, Inc.,* Case No. 87–0414–BKC–AJC–A (Bankr.S.D.Fla. Dec. 28, 1987). In *Shell Erectors, Inc.,* this Court held that the corporation, an entity affiliated with UDPC, could not assert breach of oral collateral agreements as a defense to non-performance of certain obligations under written agreements. *Slip op.* at 7.

The instant case is a classic example of the situation the *D'Oench* doctrine was established to prevent. Despite the lack of any document which convincingly establishes any joint venture, such a document would nevertheless be inadmissible due to UDPC's execution of Notes and Mortgage clearly refuting the existence of anything but a lender/borrower relationship.

### IV. *No Joint Venture Existed*

UDPC seeks to establish the existence of a joint venture and thereby the subordination of FSLIC's lien position. This claim must fail as a matter of law as well.

Under Florida law there are five elements that a court will look to in determining whether there is a joint venture between two or more parties:

1. Community of interest in the performance of a common purpose,
2. Joint control or right of control,
3. Joint propriety interest in the subject matter,
4. Right to share in the profits, and
5. A duty to share in the losses.

*Kislak v. Kreedian,* 95 So.2d 510 (Fla. 1957).

■ Parties are not joint venturers if they do not have the authority to bind each other in any manner in connection with the property. *Boyd v. Hunter,* 104 Fla. 561, 140 So. 666 (1932). Furthermore, if one party has exclusive control there is no joint venture. *Green v. Putnum,* 93 So.2d 378 (Fla.1957). It is apodictic that the mere right to share in profits does not create a joint venture. *Coral Gables Security Corp. v. Miami Corp.,* 123 Fla. 172, 166 So. 555 (1936). An obligation and intention to share in losses must also be present. *Kislak, supra; Green, supra.*

■ Furthermore, in determining whether a joint venture relationship exist one must focus on the scope of the relationship between the parties. There must be a particular agreement, although that agreement need not be in writing, and the construction of that agreement must coincide with the evident intent of the parties.

■ It is clear in the instant case that Old Sunrise and New Sunrise in each and every occasion treated their relationship with UDPC as that of a lender and a borrower. In all instances in which money was forwarded to UDPC a promissory note and a mortgage were executed and were placed on the books of the institution for servicing. When UDPC defaulted on those obligations FSLIC as Receiver moved to foreclose on those obligations.

UDPC has not alleged and could not allege that UDPC could bind Old Sunrise or New Sunrise, that Old Sunrise or New Sunrise had any control over the project except that control normally afforded a lender. Neither Old Sunrise nor New Sunrise ever controlled the construction of the building, the choice of tenants, the type of tenant

improvements, the marketing of the building, or any aspect of the development of the project.

UDPC has also not alleged and could not allege that Old Sunrise or New Sunrise had any obligation to share in losses, except as a lender whose borrower defaulted wrongfully on a loan. Sunrise merely had a proceeds interest in the Property, which is not uncommon in the lending industry. The Debtor's argument that if profits declined FSLIC's share of those profits would be reduced commensurately and that such reduction constitutes a sharing of losses is untenable. Accordingly, Debtor has alleged no facts nor submitted any sworn statement sufficient to demonstrate that there was any agreement between the parties to have a joint venture.

## V. *FSLIC's Claim Cannot be Subordinated Under 11 U.S.C. § 510(c)(1) or Any Other Theory of Law*

Counts II and III of the Amended Complaint request that FSLIC's claim and interest be subordinated to all claims and interests. Pursuant to 11 U.S.C. § 510(c)(1), a claim can only be subordinated to an allowed claim, and an interest can only be subordinated to an allowed interest.

As has already been decided, the Amended Complaint fails to allege, either factually or legally, that Old Sunrise or FSLIC as Receiver was anything other than a lender to UDPC. Accordingly, as the holder of a secured claim, FSLIC as Receiver could only be subordinated to allowed claims, which in the bankruptcy proceeding equal no more than approximately $500,000.00.

However, UDPC has failed to allege any ground upon which the claim of FSLIC as Receiver could even be subordinated to these other claimants. Old Sunrise lent money to UDPC for the acquisition and construction of the Property and improvements thereon. Old Sunrise then modified the loan to UDPC and extended additional funds to construct the building. UDPC has defaulted on the obligations into which it voluntarily entered. This is not lender liability, this is liability to the lender.

As UDPC has further failed to sufficiently allege that FSLIC as Receiver has any interest in the Property other than that of a secured lender, the "interest" of FSLIC as Receiver cannot be subordinated to the interest of UDPC. FSLIC is entitled to Summary Judgment in its favor on Counts II and III of the Amended Complaint. Therefore, pursuant to stipulation of the parties, the FSLIC has a lien on the Property subject only to priority tax claimant, City of Coral Springs.

## VI. *FSLIC Has Not Received a Preferential Transfer*

Count IV of the Amended Complaint requests the Court set aside an alleged preferential transfer of property of the Debtor.

The amount due FSLIC under the Notes, as reflected in the Final Judgment of Foreclosure, is $41,449,072.79. The schedules filed by the Debtor reflect that the value of the Property which secures the debt owed to FSLIC is substantially less than that sum. The writ of execution sought to levy only against the Property.

11 U.S.C. § 547(b) sets forth the elements of a preferential transfer. A crucial element is that the transferee receive more than the transferee would have received in a liquidation. In a liquidation, FSLIC as Receiver would have received the Property. As the writ of execution levied on the Property, all FSLIC did was increase its already significantly undersecured position. As FSLIC did not receive more than it would have received in liquidation, the writ of execution on the separate unsecured judgment claim of only $651,000.00 is not a preferential transfer. FSLIC is entitled to a Summary Judgment on Count IV of the Amended Complaint.

## VII. *Conclusion*

The Court finds all the arguments proffered by the FSLIC, save the *Hudspeth* case, are proper and evidence the lack of any justiciable issue of fact remaining to be tried by this Court. Therefore, the FSLIC is entitled to a judgment in its favor as a matter of law holding its lien position to be consistent with that position as established

by the State Court Action and stipulations herein as to priority tax claims.

DONE AND ORDERED.