92 So.2d 614 (1957)
Frank S. CANNOVA, as Administrator of the Estate of Thomas J. Greiner, also known as Jacob T. Greiner, deceased, and Thomas J. Greiner, Jr., Appellants,
v.
Nelson H. CARRAN, as Administrator of the Estate of Ann Paul, sometimes known as Ann Paul Greiner, and also known as Ann Greiner, deceased, and Anthony Paul, Appellees.
Supreme Court of Florida, en Banc.
January 30, 1957.
Rehearing Denied March 7, 1957.
Leonard Robbins, Hollywood, and Phillip Goldman, Miami, for appellants.
G.H. Martin, Fort Lauderdale, for appellees.
DREW, Justice.
On March 20, 1953 Nelson H. Carran, as administrator of the estate of Ann Paul, sometimes known as Ann Paul Greiner and also known as Ann Greiner, deceased, and Anthony Paul filed a complaint in the Circuit Court of Broward County against Frank S. Cannova, as administrator of the estate of Thomas J. Greiner, also known as Jacob T. Greiner, deceased, and Thomas J. Greiner, Jr. The complaint alleged, inter alia, that Ann Paul was the owner of an undivided one-half interest in certain described real estate, mortgages and other personal property in Broward County, Florida. The complaint further alleged "that said Ann Paul contributed monies *615 toward the purchase and acquisition" of the aforesaid real estate, mortgages and other personal property and "also work, labor and materials to the improvement of said real estate" and that all of said property "was held jointly with Thomas J. Greiner or in the name of Thomas J. Greiner[1]." It is further alleged that the plaintiffs at the time of the filing of the complaint and at all times since the death of the said Ann Paul have been the owners in fee simple of an undivided one-half interest in said property and the absolute owners of an undivided one-half interest in said personal property and in all other real estate and personal property owned or held in the name of Thomas J. Greiner[1] or jointly by said Thomas J. Greiner and said Ann Paul at the time of the death of the said Ann Paul; that she owned said half interest and[1] was in possession of said property at the time of her death. It is then alleged that the defendant Cannova, as administrator, had at all times since his appointment and at the time of the filing of the complaint been in the sole possession of said property and had received, collected and used all rents, issues, profits and interests thereof, the exact value of which was unknown to the plaintiffs; that the said defendant Cannova had failed and neglected to pay over to the plaintiffs the share of said plaintiffs' rents, issues and profits aforesaid and had utterly failed to account for defendants use of said property as aforesaid.
The complaint prayed that the plaintiffs be decreed to be the owners of not less than one-half interest in all of said real and personal property standing in the name of Thomas J. Greiner or Thomas J. Greiner and Ann Greiner jointly at the time of the death of said Ann Paul and for an accounting of the rents, issues and profits therefrom and "that a partition of the above described and referred to property be decreed by this court in accordance with law and that one-half of the proceeds of the sale be conveyed to the plaintiffs" and for other relief. Motion to dismiss the complaint was denied. Defendants answered admitting that Thomas J. Greiner, Jr. was the sole heir at law of Thomas J. Greiner but alleging that the said Ann Paul (Ann Paul Greiner) had no interest whatever in any of the lands or personal property standing in the name of Thomas J. Greiner and, further, that "Ann Paul Greiner and Thomas J. Greiner were either formally married or were common-law husband and wife, and took said property and mortgage as husband and wife, and that for numerous years prior to the death of Ann Paul Greiner, these persons held themselves out to the community as husband and wife, were generally known in the community as husband and wife, and during their joint lives they executed numerous Deeds and Mortgages as husband and wife, filed joint income tax returns as husband and wife, and on many occasions swore before Notary Publics that such status existed between them, and represented themselves as such to their attorneys, and for the purpose of conveying property and also to receive in return therefor security for such conveyances. That the said Ann Paul Greiner and Thomas J. Greiner had either been legally joined together in lawful wedlock, or were common-law husband and wife at the time of the death of Ann Paul Greiner, on January 11, 1952, and that all properties or mortgages that were held in their joint names were as husband and wife, and that the parties held said items as Estates by the Entirety, and that the deceased husband, Thomas J. Greiner, was then entitled to all such entirety property by reason of his being the surviving spouse of the said Ann Paul Greiner. Defendant therefore denies any one-half interest in any property or mortgages being in Ann Paul Greiner or her personal representative."
*616 The answer further denied that Ann Paul Greiner contributed any money or services or any consideration toward the acquisition of the property held either in the joint name of Thomas J. Greiner and Ann Greiner or individually in the name of Thomas J. Greiner. The answer alleged that such properties "were purchased or acquired with monies belonging to the said Thomas J. Greiner and all monies or property for which mortgages were taken were furnished exclusively by the said Thomas J. Greiner and that the said Ann Greiner contributed nothing to the acquisition of any real property, personal property or assets of the said Thomas J. Greiner." It is further averred in the answer "the Defendant states that he has made no accounting to Plaintiffs, and has paid no money to the Plaintiffs, and further answering states that all property described in the Complaint, and all other property held by him as Administrator of the Estate of Thomas J. Greiner, are the sole and absolute property of the said Estate, by reason of the fact that all consideration for the acquisition thereof was furnished by the said Thomas J. Greiner and further by reason of the fact that the said Thomas J. Greiner and Ann Paul Greiner were either legally married or were common-law husband and wife, and they held any and all jointly held property, both real and personal, as Tenants by the Entirety, and that any property so held automatically became the sole property of Thomas J. Greiner by reason of the fact that he survived Ann Paul Greiner, and that all other property became the sole property of Thomas J. Greiner by reason of the fact that he furnished all consideration for the purchase of same and that same was always in his name, and also by reason of the fact that any interest of the said Ann Paul Greiner in any property would devolve upon her husband, Thomas J. Greiner, by reason of the fact that he is the sole surviving spouse of Ann Paul Greiner, who died intestate, and that there was no issue of said marriage." On the issues thus made by the complaint and answer voluminous testimony was taken, at the conclusion of which the special master appointed in said cause made the following findings and recommendations:
"The main issue in the case is whether or not the parties were common law husband and wife, as there was no attempt to show a ceremonial marriage. If they were common law husband and wife, the plaintiffs take nothing by this suit. But if they were not common law husband and wife, the plaintiffs are entitled to one half of the estate accumulated between them, all of which stood in the name of Thomas J. Greiner at the time of his death, irrespective of how the title was held during their lifetimes. For the evidence is undisputed that both parties contributed time and money to the acquisition of said property, and some evidence that they considered themselves partners. * * *
"The testimony in this case conclusively shows that all of the relatives of both Tom and Ann knew that they were not married to each other and that their relationship with each other was meritricious. The testimony of witnesses with whom they lived is to the same effect. Not only is there an absence of proof of any agreement between Tom and Ann to become husband and wife and to live with each other as such, but declarations made by both of them to their relatives and with whom they lived were that the marital relationship did not exist between them. * * *
"From the above mentioned testimony, it appears to the undersigned Master that the testimony and proofs in this case fail to show the existence of such a state of facts as to establish a common-law marriage, and warrants the entry of a decree in favor of plaintiffs in accordance with the prayer of the Complaint." (Emphasis ours.)
*617 Following the filing of a report of the special master, an order of rereference for the purpose of taking additional testimony was made following which the special master filed a supplemental report the following of which are the pertinent portions:
"The testimony was these witnesses fails to show any creditable evidence of the necessary ingredient of any common law marriage, namely, (to use the words of the Supreme Court of Florida) `a present assent that they would presently become husband and wife or that they did become husband and wife.' Defendants have produced no evidence from which the Special Master can believe that there was ever any such agreement of present marriage.

"On the other hand, the undisputed testimony by the mother and sister of Thomas J. Greiner and the father and brothers and sisters of Ann Paul, and the persons with whom Tom and Ann lived and those with whom they closely associated, in Florida, is not only undisputed but it conclusively shows that although the impression was occasionally given to persons who dealt with them or who saw them occupy the same quarters that they were husband and wife, there was no general reputation of marriage in the neighborhoods in which they lived, and, of controlling importance, the parties never entered into any marriage contract or ceremony, never considered themselves as partners. (Emphasis added.)
"The Special Master therefore adopts his former report and affirms that plaintiffs and defendant should share the accumulated property of both parties equally."
The lower court entered a decree in said cause in which the master's report was ratified and confirmed in every respect and in which the lower court decreed:
"That at the time of her death Ann Paul was the owner of an undivided one-half interest in the following described real and personal property, to-wit: Cash in Dania Bank, Dania, Florida, in the sum of $1,543.31. Mortgage from Harold W. Alpin and Minnie M. Alpin to Thomas J. Greiner, encumbering Lot 12, Block 13, of Hollywood South Side Addition; Mortgage from Albert L. Tissot and Milford C. Tissot to Thomas J. Greiner, covering Lot 12, Less the south 100 ft. of Block 2, of Pine Ridge Estates; Mortgage from Carl Toscani to Thomas J. Greiner, covering East 1/2 of Northeast 1/4 of Southwest 1/4 of Section 35, Township 50 South, Range 42 East; 1-1949 Cadillac Sedan, Engine #49670889; Lots 3 and 4, Block 200 of Hollywood Central Beach; Lots 21, of Block 1, of St. James Park, West Addition.
"4. That all of the described property should be partitioned under a decree of this Court and that the Court retain jurisdiction of this cause for the purpose of entering such decree and other appropriate decrees herein."
It is from the latter decree that this appeal is prosecuted.
It is urged by appellants that the master and chancellor below ignored and failed to apply the well established principle of law that the burden of disproving the alleged marriage of these two deceased persons was upon the plaintiffs. Appellants argue that the proof introduced by them established the existence prima facie of either a common law or ceremonial marriage and that the plaintiffs' proof wholly fails to overcome the presumption of said marriage. They cite many of our decisions on this question, notably Le Blanc v. Yawn, 99 Fla. 328, 126 So. 789. Among others cited are Chaachou v. Chaachou, Fla. 1954, 73 So.2d 830 and the cases there cited, and In re Colson's Estate, Fla. 1954, 72 So.2d 57. *618 Appellants then contend that both the master and the chancellor failed to give the defendants the benefit of the aforementioned principle of law and that in doing so, reversible error was committed.
While it may be logically argued that the master in the lower court failed in his determination of the factual situation to recognize where the burden of proof rested, we are, nevertheless, of the view that the ultimate conclusion reached by both the master and the trial court with respect to this question is supported by the record. It is worthy to note that after the testimony had been concluded and the master had made his findings, appellants moved for and obtained permission to present and did actually present much additional evidence to establish the existence of said marriage. They were not cut off from proof at any point in the proceedings but, on the contrary, the judge of the lower court was extremely liberal in allowing both sides to exhaust the possibilities of evidence on this question. We are, therefore, not inclined to disturb the decree of the court in this respect.
There is a basic and fundamental reason, however, why the decree of the lower court cannot stand. Having determined that these people were not husband and wife, there is no basis in the record for the decree of the lower court dividing in equal parts all of the possessions, real and personal, owned either by Thomas J. Greiner, individually, or by Thomas J. Greiner and Ann Greiner jointly between the sole heirs of each of these parties. It is difficult to determine from the phraseology of the complaint whether the plaintiffs in the court below rest their case upon the theory of a constructive trust or upon the theory of a joint adventure. Whether under one or the other, the decree is erroneous.
The evidence does not support the contention of appellees that under the theory of a constructive trust the property standing in the lone name of Thomas J. Greiner at the time of the death of Ann Greiner should be divided equally between his heirs and hers. There is little evidence in the record on this subject. The greater portion of the evidence concerns what the master considered the main question, namely the existence or non-existence of the marriage. In those places in the record where we find any reference to specific property, the deceased Thomas J. Greiner insisted to witnesses who testified that such property was his own and that Ann Greiner had no interest whatever in it. For example, it appears from the record that Milford C. Tissot, a witness for appellees, purchased certain lands and buildings and the businesses thereon from the Greiners around the first of September, 1949. Tissot testified that he talked to Thomas Greiner early that summer with reference to buying the place in the presence of Ann Greiner. He testified that Thomas Greiner did all of the talking and that the lady was back of the counter and that was about all he knew about her. A little later in the summer and at the time of the signing of the sales agreement Tissot testified that he made inquiry of Thomas Greiner about his relationship with Ann, particularly with reference to obtaining her signature to the sales agreement and deed. Tissot then testified:
"Before we would sign it we said what is the relationship of this woman that has been there all the while that you call Ann, and well, he said, this is my place. She has nothing to do with this place whatsoever. This place is mine. And he says my mother has some money invested $5,000 loaned me for which he was going to give her one hundred foot lot immediately south of the place, which he had taken off. He was supposed to give that for her share. So the brother and I was new in Florida, only down here a *619 year and a half. We came in 1947 in June, little over two years, so * * *
"Q. In other words he told you she didn't have to sign the paper? A. No. He said nobody has to sign this. This is my property, but we seen her there so much and she seemed to be an accessory to the place. In other words, he commanded her to do everything and he was yelling at her. We demanded, to make our deal save, [sic], it was around $42,000 deal, we demanded, before we would leave the money out of escrow, that that woman would have to sign to protect us. We didn't know, but * * *"
It is true, and the proofs show, that Ann Greiner was a hard worker and performed many menial tasks in the businesses operated by Thomas J. Greiner during the joint lives of these people. Whether she was actually paid for her labor or whether she contributed said labor for room and board and companionship, or the extent of such labor of the amount of any monies that she may have advanced (and there is no testimony in this record as to any specific amount) appears nowhere in the record. The testimony on this question falls far short of that required to establish a constructive trust in cases of this sort. The legal title to much of this property, real and personal, was acquired by and remained always in the sole name of Thomas J. Greiner. It was in his name at the time of Ann Greiner's death. The presumption is that Thomas J. Greiner was the owner of all of the property which stood in his name. The quantum of proof required to overcome such presumption is ably discussed in Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419, 422, 54 A.L.R. 1173 and numerous other cases of this court. In the Quinn case, supra, we said:
"From an examination of the text-books and many English and American cases touching this question the law seems well settled that a court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold. * * *
"This court has repeatedly announced the rule that a constructive trust may be proven by parol testimony, but that the evidence to establish such a trust must be so clear, strong, and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. Lofton v. Sterrett, 23 Fla. 565, 2 So. 837; Geter v. Simmons, 57 Fla. 423, 49 So. 131; Johnston v. Sherehouse, 61 Fla. 647, 54 So. 892; Rogero v. Rogero, 66 Fla. 6, 62 So. 899; McGill v. Chappelle, 71 Fla. 479, 71 So. 836." (Emphasis added.)
The Quinn case, supra, has been cited and adhered to in many decisions of this Court. See Lightfoot v. Rogers, Fla. 1951, 54 So.2d 237; Simpson v. Hoffman, Fla. 1954, 75 So.2d 703; Tillman v. Pitt Cole Co., Fla. 1955, 82 So.2d 672; and Lindley v. Lindley, Fla. 1955, 84 So.2d 17, 20.
In the Lindley case, supra, the wife in a divorce case contended that she was the joint owner of two automobiles which were held in the name of her husband. The chancellor held that there was such a joint ownership but we reversed his finding in this respect pointing out:
"The burden of proof to establish, to the exclusion of reasonable doubt, that the wife acquired either a legal or equitable interest in the vehicles rested upon the wife but it is our interpretation of the evidence that she failed to meet, or satisfy, that burden." (Emphasis added).
Turning now to the question of whether or not there was a joint adventure. *620 In the first place, the allegations of the complaint are wholly insufficient to support a decree on this theory and even if they were sufficient, the record is devoid of any evidence on this point.
The essence of a joint adventure is an agreement between the parties. None is alleged or proven. In the case of Coral Gables Securities Corp. v. Miami Corp., 1936, 123 Fla. 172, 166 So. 555, 557, it is said:
"There can be no joint enterprise without an agreement express or implied to enter upon an undertaking in the objects and purposes of which the parties have a community of interest, and in pursuance of which they have equal authority. As a legal concept, joint enterprise is not a status created by law. Liability of one member of a joint enterprise for the acts of another is a vicarious liability founded upon the relationship that has arisen between parties wholly ex contractu; it springs from the operation of law upon the practical relationship into which the parties have voluntarily brought themselves by contract and is largely governed by principles analogous to those applicable to partnership and agencies."
The case of Beckett v. Pierce, 1946, 157 Fla. 184, 25 So.2d 486 was decided on the basis of the rule established in the Coral Gables case, supra, where the same principles were applied. See also the recent case of Russell v. Thielen, Fla. 1955, 82 So.2d 143.
We therefore conclude that while the lower court correctly determined the issue of marriage, its decree was erroneous in directing a partition of the property and a division of the proceeds between the respective heirs of Thomas J. Greiner and Ann Paul. That portion of the decree which we hold to be erroneous is reversed with directions that all property, real or personal, standing in the name of Thomas J. Greiner be decreed to be owned by his estate. Any property standing in the name of Thomas J. Greiner and Ann Greiner jointly shall be decreed to have been at the time of Ann Greiner's death vested in them as tenants in common, and such decree should direct the administrator of the estate of Thomas J. Greiner to segregate and separate such jointly owned property and account to the administrator of the estate of Ann Paul for one-half thereof and for one-half of any income therefrom or additions thereto since the date of the death of said Ann Paul.
Reversed in part and affirmed in part.
THOMAS, HOBSON, THORNAL and O'CONNELL, JJ., concur.
TERRELL, C.J., and ROBERTS, J., dissent.
TERRELL, Chief Justice (dissenting).
Thomas Greiner and Ann Paul were scions of two very respectable families. They are said to have lived together for years in Mahoney, Pennsylvania, and later in Hollywood, Florida, without the benefit of clergy, during which time they accumulated some property. Both died intestate. Tom survived Ann about two months and appellant Cannova was appointed administrator of his estate. This suit was brought by Nelson H. Carran as administrator of Ann's estate against appellants to recover one-half the property accumulated by Tom and Ann on the theory that they were partners or joint adventurers. Motion to dismiss the complaint was overruled, an answer was filed alleging that Tom and Ann were either formally married or were common law husband and wife and that Tom was entitled to all the estate by reason of the fact that he was the surviving spouse of Ann, and her sole heir at law, there being no issue of the marriage. A master was appointed, testimony was taken and the master found that the parties were not married. He recommended a final decree in favor of the plaintiff. The chancellor *621 adopted the report of the master and decreed accordingly. This appeal is from the final decree.
The issue before the trial court was whether or not Thomas J. Greiner and Ann Paul had prior to January 11, 1952, the date of Ann's death, entered into a ceremonial or a common law marriage. The only point here is whether or not there was error in the decree of the chancellor which had to do with the question stated above as well as the division of the property.
The evidence shows that Ann died January 11, 1952, at Hollywood, Florida, the death certificate recited that her name was Ann Paul Greiner and that she was married. Prior to her death a social security card was issued to her in the name of Ann Greiner. From 1948 through 1951 Thomas J. and Ann Greiner filed joint federal income tax returns. Several conveyances were made to Thomas J. Greiner and Ann Greiner, his wife. This property is the gravamen of the present litigation.
In his report the master reviewed the testimony and detailed the principles of law governing this case, among which he included the following: "There is no presumption that persons are married. Accordingly the burden of proving a marriage rests on the party who asserts it, particularly where a common law marriage is asserted; and an allegation that a party was not married does not thereby require the pleader to assume the burden of proof of nonmarriage." 55 C.J.S., Marriage, § 43, p. 887.
The proper test is whether or not in adopting the master's report the chancellor misapprehended the legal effect of the evidence as a whole. Hooper v. Stokes, 107 Fla. 607, 145 So. 855, 146 So. 668; Lambrose v. Topham, Fla., 55 So.2d 557; In re Thompson's Estate, 145 Fla. 42, 199 So. 352. There was conflicting evidence but when considered in its entirety, the chancellor had substantial credible evidence as basis for his decree.
Even if the master was confronted with a false premise, it is not shown that he misapprehended the legal effect of the evidence as a whole. As to the marital status of the parties, there is ample evidence to support the chancellor's finding. As to the property division, account of the death of the parties and vagueness of the evidence, that question was complicated. It is shown that both parties contributed to the accumulation of the property, real and personal, whether held jointly or in the name of Thomas Greiner individually. There is ample showing that Ann contributed substantially to accumulation of the property. As to exactly how much each contributed, the record is not clear.
I would affirm the judgment.
ROBERTS, J., concurs in affirmance.
NOTES
[1] The italicized language and similar language elsewhere in the complaint was added to the complaint after the taking of testimony and for the purpose of conforming to the proof adduced.