**In re GULFSHORE DEVELOPMENT CORP., Debtor.**

**GULFSHORE DEVELOPMENT CORP., Plaintiff**

**v.**

**The NATIONAL BANK OF LEE COUNTY and Sunshine Masonry, Inc., Defendants.**

**Bankruptcy No. 91–7200–9P1.**

**Adv. No. 91–616.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Aug. 13, 1992.

Phillip J. Jones, Punta Gorda, Fla., for plaintiff.

Frank C. Alderman, Fort Myers, Fla., for defendant, The National Bank of Lee County.

Jeffrey W. Leasure, Thomas F. Kiesel, Fort Myers, Fla., for defendant, Sunshine Masonry, Inc.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Complaint filed by Gulfshore Development Corp. (Debtor) against the National Bank of Lee County (Bank) and Sunshine Masonry, Inc. (Sunshine). The Complaint consists of one count and seeks the turnover pursuant to 11 U.S.C. § 542 of a Certificate of Deposit (C.D.) in the amount of $50,000.00 held by

the Bank. Also under consideration is a counter-claim for declaratory relief filed by Sunshine against the Debtor, seeking a determination that the C.D. and various items of personal property held by the Debtor are not property of the estate by virtue of 11 U.S.C. § 541(d) as they are the subject of a constructive or resulting trust in favor of Sunshine. It should be noted that on March 6, 1992, this Court entered an Order dismissing the Bank as a Defendant in this adversary proceeding. This leaves for consideration the claims of the Debtor and Sunshine, both of which relate to the C.D. and some miscellaneous personal property. The relevant facts as established at the final evidentiary hearing relevant to this controversy are as follows:

Sunshine is a Florida Corporation and at the time relevant was engaged in business in Lee County, Florida, as a masonry subcontractor. In March of 1989, Sunshine formed a division for the purpose of bidding on and securing general contracting business. Sunshine hired Wade Moser (Moser) to head this new division. In order to bid on contracts for general construction, Sunshine was required to obtain a payment and performance bond. Sunshine obtained such bond from Amwest Surety Insurance Company (Amwest), which required an irrevocable letter of credit to secure the bond. In order to comply Sunshine obtained the irrevocable letter of credit from the Bank. In connection with issuing the letter of credit, the Bank required that Sunshine execute a promissory note in the amount of $50,075.00 in favor of the Bank, to be secured by the C.D. purchased by Sunshine from the Bank on March 29, 1989.

Shortly after Sunshine's general contracting division commenced bidding on jobs, it became apparent that several of the general contractors with whom Sunshine did business as a subcontractor became upset because they were now bidding against Sunshine's division for jobs. As a result, Sunshine's principals decided to incorporate the general contracting division so that Sunshine's subcontracting business and Sunshine's general contracting business would appear to be unrelated. The division was then incorporated under the name of the Debtor. The record reveals that the parties intended that Sunshine would share in the Debtor's profits and pay its expenses when necessary. However, it is undisputed that Sunshine was never a stockholder of the Debtor, and Moser has always been its sole stockholder.

On April 9, 1990, Moser, as President of the Debtor, wrote a letter to Sarah Hook at Amwest regarding the bonding requirements for the Debtor. In that letter, Moser stated as follows:

. . . . .

As you are well aware, we are presently conducting business as the General Contracting Division of Sunshine Masonry, Inc. This type of business structure has worked quite well in the past, however, it has recently created some confusion and problems with our General Contracting clients and our Concrete/Masonry clients. I am sure you can understand the reluctance of a General Contracting firm to award concrete/masonry subcontracts to a firm that is in competition with them on other projects.

We feel it is in our best interest to negotiate and bid on all future contracting projects as a separate entity, specifically Gulfshore Development Corporation, thereby eliminating any conflict of intrust by Sunshine Masonry Inc.

The only time we would deviate from this practice would be if a client (Federal, State or local government) should require a firm to have operated under its' present name for a time exceeding Gulfshore's active status. This would of course require us to submit our bid as the General Contracting Division of Sunshine Masonry, Inc.

After the Debtor was incorporated, the C.D. matured and a check in the amount of $50,000.00 was issued to Sunshine by the Bank. Sunshine, in turn, then endorsed the check over to the Debtor who then endorsed the check to the Bank in order to purchase a new C.D. to be held in its own name. At approximately the same time, the Debtor and Sunshine executed a prom-

issory note in the amount of $50,075.00 in favor of the Bank, which was secured by the C.D. purchased by the Debtor. The Bank then executed an addendum to its letter of credit, amending the previously issued letter of credit to reflect that it was established in favor of Amwest at the request of the Debtor to secure bonds issued on behalf of "Sunshine ... and/or [the Debtor]."

It is without dispute that the Debtor never maintained its own bank account. Through September or October of 1990, Sunshine collected all of the Debtor's accounts receivable and paid all bills of the Debtor. Through December of 1990, Sunshine paid the Debtor's employees and material men, apparently because these employees and suppliers required Sunshine's guarantee of payment. Only if the Debtor was able to obtain credit, would it purchase materials and supplies in its own name. However, if the Debtor was not able to obtain credit on its own, Sunshine would purchase the needed supplies and materials. It is also undisputed that Moser individually, and not as President of the Debtor, purchased office equipment, including a word processor, copier, computer, facsimile machine, and printer for use by the Debtor in its business. After purchasing the equipment, Moser would then forward the invoice for the purchased item to Sunshine, which would then write a check to Moser to reimburse him for the purchase price.

Sometime in the beginning of 1991, Moser, as President of the Debtor, attempted to cash in the C.D. In order to protect its interest in the C.D., Sunshine filed a Complaint in the Circuit Court of Lee County seeking (1) a temporary injunction prohibiting the Bank from delivering the C.D. to the Debtor, (2) declaratory relief to determine the true ownership of the C.D., (3) replevin of the personal property and (4) recovery of money lent on the theory that Sunshine had loaned the Debtor $59,068.02. On June 1, 1991, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code and then filed the Complaint under consideration.

Sunshine contends that the parties intended that the Debtor hold merely the legal title to the C.D. and to the personal property and Sunshine was the equitable owner of these assets. Sunshine urges that a constructive or resulting trust should be imposed on these assets in its favor and as such, these assets are not property of the estate by virtue of § 541(d) of the Bankruptcy Code.

In opposition, the Debtor contends that the money advanced by Sunshine to purchase the C.D. was a gift. Regarding the office equipment, the Debtor contends that these items were paid for by Sunshine with money representing the Debtor's collected accounts receivable.

In resolving this dispute, it should be noted at the outset that § 541(a) defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." § 541(d) goes on to provide:

"(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

■ It is the contention of Sunshine that by virtue of § 541(d), the Debtor holds only bare legal title and Sunshine holds equitable interest in the C.D. and in the office equipment by virtue of a constructive or resulting trust. The difficulty with Sunshine's contention is first, that the two concepts of trusts urged are not interchangeable, and in fact, they are mutually exclusive. Second, technically no issue was presented in a proper procedural manner in which Sunshine sought to impress the C.D. and the personal property with either resulting or constructive trust. Nevertheless, this Court is satisfied that it is appro-

priate to discuss these concepts and proceed to resolve whether a constructive or resulting trust should be impressed on the C.D. and the personal property involved.

■ A constructive trust is a device of equity and it is used to prevent fraud or injustice. *In re Turner*, 134 B.R. 646 (Bankr.N.D.Okla.1991). A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold property in trust for a reconveyance or other purpose, where the fiduciary or confidential relationships is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence. To establish such a trust it is not necessary to show fraud or intent not to perform the agreement when it was made. 76 Am.Jur. 2d, § 219, at p. 245.

■ This record leaves no doubt that there is no evidence in this record which supports the proposition that the Debtor obtained title to the C.D. or the personal properties by fraud or other improper conduct. On the contrary, it is clear that Sunshine advanced the funds to purchase at least the C.D. for the purpose to serve as an accommodation to the Debtor and to assist the Debtor to carry on its contracting business which it could not have done without the C.D. purchased and paid for by Sunshine. Neither is there any evidence which would support the conclusion that the personal properties in question were obtained by the Debtor through fraud or improper conduct.

■ This leaves for consideration the claim of Sunshine based on the resulting trust theory. In order for a resulting trust to arise under Florida law, it must appear from the entire transaction that the parties intended that one should hold legal title with the beneficial and equitable ownership to be held by another. *Howell v. Fiore*, 210 So.2d 253 (Fla. 2d DCA 1968); *Socarras v. Yaque*, 452 So.2d 992 (Fla. 3d DCA 1984); *In re Gardinier*, 49 B.R. 489 (Bankr.M.D.Fla.1985). As stated by the Court in *Howell v. Fiore, supra:*

a resulting trust arises when the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person whom equity deems to be the real owner. (citations omitted).

Applying the above to the facts as they appear from this record, this Court is satisfied that a resulting trust should be imposed on the C.D. in favor of Sunshine. The record is clear that Sunshine advanced the funds used by the Debtor to purchase the C.D., and did so only to permit the Debtor to obtain the payment and performance bonds essential to its business, and the parties never intended that the Debtor would be permitted to cash in the C.D. for its own use.

Regarding the office equipment, however, this Court is satisfied that this property is property of the estate. The evidence reveals that Sunshine both collected both the Debtor's accounts receivables and paid the Debtors expenses. There is no evidence to indicate that the payment for these items was made out of anything other than the Debtor's revenues.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.