802 So.2d 431 (2001)
PORTELL INTERNATIONAL REALTY, INC., Mary Ann Portell, Mary Ann Portell d/b/a Just Do It and/or Just Do It, Inc. and Just Do It of Miami, Inc., Appellants,
v.
Marc JACOBSON and Randi Jacobson, Appellees.
No. 3D01-2227.
District Court of Appeal of Florida, Third District.
December 12, 2001.
Frankel & Lieberman; Lauri Waldman Ross, Miami, for appellants.
Bilzin Sumberg Dunn Baena Price & Axelrod and Mitchell E. Widom, Miami, for appellees.
Before COPE, FLETCHER and RAMIREZ, JJ.
COPE J.
This is an appeal from a temporary injunction which precludes the transfer of real estate pending the adjudication of the underlying lawsuit which seeks to impose a constructive trust. We conclude that the temporary injunction should not have been entered and reverse it.

I.
Defendant-appellant Mary Ann Portell is a real estate broker who represented Marc and Randi Jacobson ("clients") in a negotiation to buy two condominium units which were being constructed on Fisher Island in Miami-Dade County. The real estate broker eventually bought the condominium units herself. The clients filed *432 suit, contending that the purchase breached a fiduciary duty owed by the broker to them, as her clients. The clients sought to impose a constructive trust on the condominium units.[1]
The clients moved for a temporary injunction to forbid a sale of the condominium units during the pendency of this litigation. For purposes of the injunction ruling, the trial court decided to view the facts in the light most favorable to the broker, as the defending party. The court entered a temporary injunction, and the broker has appealed.

II.
As did the trial court, we begin by viewing the facts in the light most favorable to the broker. The clients desired to buy two condominium units which were to be constructed in a new condominium building on Fisher Island. The broker represented them in that negotiation.[2]
The purchase contract was negotiated with the developer to the point that it was ready for signature. The clients failed to sign, despite repeated requests that they do so. Ultimately the clients told the broker that they had decided not to purchase the property. The broker asked the clients for permission to buy the two condominium units. They agreed and also gave her permission to use the contract which the clients had negotiated, but declined to sign.
The broker met with a representative of the developer. The developer agreed to sell the two units to the broker. The effective price for the broker was somewhat higher, because the developer required the broker to pay her own buildout expenses. Under the clients' proposed transaction, the developer would have covered the buildout expenses.
The developer did, however, agree to reduce the amount of the deposit which the broker would have to pay. This was because the broker had already contracted to purchase another condominium unit in the new building. With this purchase, the broker would be buying three units and the developer was willing to reduce the amount of the deposit.
During the time period when the clients had been actively pursuing the condominium transaction, the clients had attempted to have the developer reduce the amount of the deposit. This negotiation had been conducted by the clients' real estate attorney. The developer had refused to reduce the required deposit.
In granting the temporary injunction, the trial court concluded that when the developer agreed to reduce the deposit for the broker, this imposed a duty on the broker to return to the clients one more time and tell them about the deposit reduction. Presumably the idea is that the clients should have been given the opportunity to resume negotiations with the developer, and renew their earlier-rejected request for a lower deposit.
We respectfully disagree with the trial court's reasoning on this point. The clients told the broker that they had no interest in proceeding with the transaction, and that the broker was free to pursue it herself. The broker was entitled to take the clients at their word. Her responsibility to the clients with regard to the purchase of these two condominium units was *433 at an end. The fact that thereafter the developer agreed to reduce the deposit requirement for the broker makes no difference.
The clients rely on such cases as Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927), and Hershey v. The Keyes Co., 209 So.2d 240 (Fla. 3d DCA 1968). The clients also cite Restatement (Second) of Agency § 390 (1958). Those authorities are not on point. They involve the usurpation of an opportunity, or nondisclosure of a material fact, during the course of the representation of the client by the broker. That is not what happened in this case.
The clients also argue that the broker had a continuing duty to them because the clients' reservation agreements with Fisher Island had not yet been formerly terminated by Fisher Island. The reservation agreements were essentially "agreements to agree," which had the effect of reserving the clients' proposed units until a contract for purchase could be entered into. The reservation agreements had a formal procedure for the developer to terminate them, and even though the developer-imposed deadline for signing the purchase agreements had passed, the developer had not formally triggered the termination provision of the reservation agreements.
The clients thus reason that since the reservation agreements had not yet been terminated, in theory the clients could have gone back to the developer for further negotiation about the purchase of the two condominium units. That argument is irrelevant. The clients stated that they did not wish to proceed with the transaction. That ended the broker's responsibility to pursue the two condominium units.
Thus, viewing the facts in the light most favorable to the broker, we conclude that there was no breach of duty at all. On that version of the facts, the clients have no likelihood of prevailing on the merits, and the temporary injunction should have been denied.

III.
The next question to be considered is whether there is an alternative theory from which the temporary injunction may be affirmed. There is not.
In order to impose a constructive trust, it is necessary for the plaintiff to establish the claim by clear and convincing evidence. Abreu v. Amaro, 534 So.2d 771 (Fla. 3d DCA 1988). At the outset of the injunction hearing, the parties stipulated that the clear and convincing standard of proof was applicable to this motion for temporary injunction. Thus, it was the clients' burden, as the moving parties, to establish their entitlement to a temporary injunction by clear and convincing evidence.
The clients testified that they had not terminated the transaction and that they had not given the broker permission to purchase the two units. The clients offered the testimony of a witness who had negotiated the real estate contract on their behalf, but the trial court found the witness' testimony to be less than credible. The court concluded that with respect to the disputed facts, the clients had not established their case by clear and convincing evidence.
That being so, the clients failed to carry their burden of demonstrating entitlement to the temporary injunction.

IV.
For the stated reasons, the temporary injunction is reversed. This ruling is effective immediately and will not be delayed by the filing of a motion for rehearing or *434 other post-decision motion.[3]
NOTES
[1] The other appellants here are the real estate broker's companies, which have been joined as defendants in the lawsuit.
[2] For present purposes the broker concedes that she must be viewed as the clients' broker. There is a factual dispute in the trial court, which need not be addressed here, about whether she was a transactional broker.
[3] We are not convinced that the amount of the injunction bond was outside the bounds of permissible discretion.

We decline to reach the broker's argument regarding waiver of the attorney client privilege, as that was not raised in the trial court. This ruling is without prejudice to the broker to raise the issue in the trial court.