In re John W. WOOLUM, Debtor.

John W. Woolum, Plaintiff,

v.

John N. Adamovich, Defendant.

Bankruptcy No. 01–4506–3P3.
Adversary No. 01–286.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 25, 2002.

Andrew Decker, Live Oak, FL, for plaintiff.

John N. Adamovich, Conneaut, OH, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon the Complaint of John W. Woolum (Plaintiff), which seeks a declaratory judgment against John N. Adamovich (Defendant) that all right, title and interest of certain real property vests in fee simple absolute in the Plaintiff. A trial was held on February 28, 2002. In lieu of closing argument, the Court directed the parties to submit briefs and proposed Findings of Fact and Conclusions of Law and Final Judgment. Upon the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law and will enter Judgment in favor of the Defendant.

### FINDINGS OF FACT

1. Since 1993, Plaintiff has operated an automotive glass-tinting business known as Columbia Glass Tint, Incorporated (Columbia Corporation) on a certain parcel of real estate (Property) in Columbia County,

Florida and more particularly described in the Appendix.

2. Initially, Plaintiff operated Columbia Corporation on the Property pursuant to a lease agreement with Williams S. Cooper and Sylvia Cooper (Coopers), who owned the Property at that time. (Plaintiff's Ex. 2)

3. On February 29, 1996, the Coopers sold the Property to Defendant and his daughter, Stacey M. Wollum. In purchasing the Property, Defendant and Stacey M. Wollum entered into a mortgage agreement and executed warranty deed with the Coopers. The deed specified that Defendant and Stacey M. Wollum were to own the Property as joint tenants with rights of survivorship. (Plaintiff's Exs. 5, 7)

4. At the time of the purchase of the Property Stacey Wollum was the Plaintiff's spouse and the Defendant was the Plaintiff's father-in-law.

5. On March 7, 1996, an owner's title insurance policy was executed for the Property and the policy named as insured Defendant and Stacey Wollum. (Plaintiff's Ex. 6)

6. Following the purchase of the Property, Columbia Corporation began making mortgage payments to the Coopers. (Plaintiff's Ex. 9)

7. Following the purchase of the Property, Columbia Corporation began making the insurance, property tax, and maintenance and repair payments for the Property. (Plaintiff's Exs. 10, 11, 12)

8. On February 25, 2000, the marriage between Plaintiff and Stacey M. Wollum was dissolved. In the divorce decree Stacey M. Wollum was ordered to convey her one-half interest in the Property to Plaintiff.

9. On May 11, 2001, Defendant filed for Chapter 13 bankruptcy protection. (Doc. 1)

10. On June 15, 2001, Stacey M. Wollum conveyed her one-half interest in the Property to Plaintiff by quitclaim deed. (Doc. 40A) (Plaintiff's Ex. 13)

11. On September 26, 2001, Plaintiff commenced this Adversary Proceeding by filing a Complaint for Declaratory Judgment. (Adv.Doc.1)

12. On February 28, 2002, the Court held a trial regarding the Complaint for Declaratory Judgment. Defendant did not appear at the trial. (Adv.Doc.16)

13. At the trial, Plaintiff testified that he could not purchase the property due to his past financial problems. In addition, Plaintiff testified that he trusted and relied on Defendant's business advice and that he sought Defendant's help in acquiring the Property, which Defendant arranged. Finally, Plaintiff testified that prior to the dissolution of his marriage, Defendant sought to deed his interest in the Property to Plaintiff on several occasions.

14. In Answers to Interrogatories, Defendant stated that he purchased the Property and allowed Plaintiff to use the Property as long as the mortgage, tax, and insurance payments were made to the Coopers.

15. F. Eugene Kish (Kish), a certified public accountant testified on behalf of Plaintiff. Kish testified that if Defendant were the owner of the Property, he would be required to report rental income, mortgage payments and interest deductions to tax authorities. In addition, Kish testified that if Defendant were the owner of the Property, he would be entitled to claim depreciation and interest deductions to tax authorities.

16. In Answers to Interrogatories, Defendant stated that he did not report any-

thing to the Internal Revenue Service in regards to the Property. In addition, Defendant stated that he permitted the Plaintiff to claim deductions with respect to the Property. (Plaintiff's Ex. 1)

17. On February 28, 2002, the Court entered an Order on Post Trial Submissions and found that Defendant did not present any evidence other than what might be gleaned from his answers to interrogatories. (Adv.Doc.17)

18. Plaintiff argues that the Court should impose a resulting trust or constructive trust on Defendant's interest in Property and decree that all right, title and interest of the Property vests in the Plaintiff. In support of this argument, Plaintiff asserts that he has acted as the owner of the Property, while the Defendant has acted as a non-owner or "mere straw man, agent, or nominee on behalf of the Plaintiff." (Adv.Doc.18)

19. Defendant argues that the Court should allow him to retain his interest in the Property. In support of this argument, Defendant asserts that he acted as the owner of the Property, while Plaintiff has not acted as the owner of the Property. (Plaintiff's Ex. 1)

## CONCLUSIONS OF LAW

### A. Property of the Estate

■■■ The commencement of a bankruptcy case creates an estate that is comprised of all the property in which a debtor has a "legal interest" or "equitable interest" as of the petition date. 11 U.S.C. § 541(a)(1). The terms "legal interest" and "equitable interest" in property are construed broadly. *See, In re Cattafi,* 237 B.R. 853, 855 (Bankr.M.D.Fla.1999). "The extent and validity of the debtor's interest in property is a question of state law." *In re Scanlon,* 239 F.3d 1195, 1197 (11th Cir. 2001) (quoting *T & B Scottdale Contrac-*

*tors, Inc. v. United States,* 866 F.2d 1372, 1376 (11th Cir.1989)).

### 1. Ownership Interests, Resulting Trusts and Constructive Trusts

■■■ It is presumed that a person owns all property, which stands in their name. *Cannova v. Carran,* 92 So.2d 614, 619 (Fla.1957). The person whose name appears on legal title is presumed to be the owner of the property in question. *Hagopian v. Zimmer,* 653 So.2d 474, 475 (Fla.Dist.Ct.App.1995) (citing *Cannova,* 92 So.2d at 619). This presumption can be overcome when the facts support an equitable application of a resulting trust or a constructive trust. However, in Florida, neither a resulting trust nor a constructive arises in favor of a person who has not paid any part of the property's purchase price. *U.S. v. Murphy,* 850 F.Supp. 981, 983 (M.D.Fla.1994) (citing *United States v. One Parcel of Real Estate,* 768 F.Supp. 340, 346 (S.D.Fla.1991); *Frambach v. Dunihue,* 419 So.2d 1115, 1117 (Fla.Dist. Ct.App.1982)).

### a. Resulting Trust

■■■ A resulting trust arises when one party pays the consideration for purchase of realty, but title is taken in the name of another. *State, Dep't of Revenue v. Zuckerman–Vernon Corp.,* 354 So.2d 353, 356 (Fla.1977). Once the complaining party proves it paid the purchase price, a presumption arises that it was the parties' intention that the individual holding legal title was to hold the property in trust for the payor. *See, Smith v. Smith,* 143 Fla. 159, 196 So. 409, 410 (1940).

### b. Constructive Trust

■■■ A constructive trust generally arises to restore property to its rightful owner and to prevent unjust enrichment when it is against equity for a person to

retain property obtained by fraud or other questionable means. *See, Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.,* 14 F.3d 1507, 1518 (11th Cir.1994); *Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.,* 710 F.2d 1528, 1541 (11th Cir.1983). Constructive trusts arise under several particular circumstances. 55A Fla.Jur.2d, Trusts §§ 105–114 (2000). For example, a constructive trust can arise where a conveyance is induced on the agreement of a fiduciary or confidant to hold property in trust for a reconveyance or other purpose where the fiduciary or confidential relationship is one upon which there is justifiable and actual reliance and where the agreement is breached. *In re Gulfshore Dev. Corp.,* 144 B.R. 905, 909 (Bankr. M.D.Fla.1992). However, this promise to hold the property in trust does not give rise to a constructive trust, if the promise is oral and is made after the acquisition of title to the property. *Crockett v. Crockett,* 145 Fla. 311, 199 So. 337, 338 (1940). "Equity will enforce such an oral promise only if it is made at or before the time of the conveyance for the purpose of fraudulently influencing the grantor." *Id.*

It is necessary to prove the existence of a constructive trust by clear and convincing evidence. *Portell Int'l Realty, Inc. v. Jacobson,* 802 So.2d 431, 433 (Fla.Dist.Ct.App.2001). A constructive trust may be proven by parol testimony, but the evidence to establish such a trust must be so clear, strong, and unequivocal as to remove from the mind every reasonable doubt as to the existence of the trust. *Tillman v. Pitt Cole Co.,* 82 So.2d 672, 674 (Fla.1955).

### 2. Corporate Entities

A corporation is a creature of law, separate and distinct from its owners, and the principal purpose for a separate corporate personality is to enable stockholders an opportunity to limit their personal liability. *Berger v. Columbia Broad. Sys., Inc.,* 453 F.2d 991, 994 (5th Cir.1972). In general, a corporate entity is distinct and respected under a state's corporate laws. *Commonweal v. Internal Revenue Serv. (In re Commonweal),* 171 B.R. 405, 409 (Bankr.M.D.Fla.1994) (citing *Moline Prop., Inc. v. Comm'r,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943)).

A corporate entity may be disregarded where the separate personalities of the corporation and the individual no longer exist and where if the acts are treated as those of the corporation alone, an inequitable result will follow. *Id.* With respect to disregarding a corporate entity, a federal court must apply the state law of that jurisdiction. *Id.* (citing *Bendix Home Sys., Inc. v. Hurston Enter., Inc.,* 566 F.2d 1039 (5th Cir.1978)). In determining whether to disregard a corporate entity, Florida courts consider elements such as: utilizing corporate assets for the payment of personal obligations or investments, failing to maintain either the legal or factual existence of the corporate entity and generally treating the corporation as a sham. *Id.* at 410. However, when a person chooses to the privilege of doing business as a corporation, even where he is its sole shareholder, he forfeits his right to claim that he is the alter ego of the corporation. *State v. Barreiro,* 432 So.2d 138, 140 (Fla. Dist.Ct.App.1983).

### B. Application

#### 1. No Resulting or Constructive Trust arises pursuant to *Murphy*

Plaintiff claims an equitable interest as a beneficiary of a resulting or constructive trust in Defendant's interest in the Property. As stated above, the District Court in *Murphy* found that neither a constructive nor resulting trust

arises in favor of a person who has not paid any part of the purchase price of Property. *Murphy* is a District Court decision from the Middle District of Florida and this Court is bound to follow the decision. *In re Shunnarah*, 273 B.R. 671, 672 (M.D.Fla.2001) (holding that this Court must follow the decision of a single district judge in a multi-judge district).

Plaintiff argues that he has paid all of the Property's mortgage, tax, insurance and maintenance and repair expenses and Plaintiff has submitted copies of cancelled checks in support of this argument. However, all of these cancelled checks are in the name and on the account of Columbia Corporation. As a separate entity from the Plaintiff, Columbia Corporation has paid all of the Property's mortgage, tax, insurance and maintenance and repair expenses. Furthermore, Plaintiff cannot claim that he is the alter ego of Columbia Corporation for his benefit. As a result, Plaintiff has not presented evidence that shows he has paid any part of the Property's purchase price and pursuant to *Murphy,* no resulting or constructive trust arises in favor of the Plaintiff.

## 2. No Resulting Trust Arises in Spite of *Murphy*

Even without considering *Murphy,* no resulting trust arises in favor of Plaintiff. As stated above, Columbia Corporation has paid all of the Property's mortgage, tax, insurance and maintenance and repair expenses, while Plaintiff paid none of these expenses. Consequently, no presumption arises that the parties' intended for individual holding legal title was to hold the property in trust for the payor. Therefore, no resulting trust arises in favor of Plaintiff.

## 3. No Constructive Trust Arises in Spite of *Murphy*

Even without considering *Murphy,* no constructive trust arises in favor of Plain-

tiff. In addition to the deed, the mortgage agreement and title insurance policy have been executed by Defendant and show Defendant's intent to act as an owner of the Property. This is the case despite Kish's testimony that Defendant has addressed the Property's tax consequences in a manner inconsistent with ownership. Furthermore, the cancelled checks regarding the Property's mortgage, tax, insurance and maintenance and repair expenses indicate that Plaintiff does not intend to act as the owner of the Property. In the remaining evidence, the Court is summarily presented with the parties' parol testimony of their divergent versions of the facts. This parol testimony is not so clear, strong, and unequivocal as to remove from the mind every reasonable doubt as to the existence of a constructive trust. Consequently, the Court finds that the Defendant is the rightful owner of his interest in the Property and that he does not retain that interest through fraud or other questionable conduct. Therefore, no constructive trust arises in favor of Plaintiff.

## CONCLUSION

The Court finds that the Plaintiff has not established an equitable interest as a beneficiary of a resulting or constructive trust in Defendant's Property interest. As such Plaintiff is not entitled to any right, title or interest in Defendant's one-half interest in the Property. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

## APPENDIX

Begin at the intersection of the North right-of-way line of Duval Street and the East right-of-way line of Seventh Street, and run thence North 8852′ East, along

said North right-of-way line of Duval Street, 116.35 feet; thence North 115′ West 120.15 feet; thence North 8519′ West, 4.55 feet; thence South 8841′ West, 96.40 feet to the East right-of-way line of Seventh Street; thence South 612′ West, along said East right-of-way line of Seventh Street, 121.00 feet to the POINT OF BEGINNING.

**LESS AND EXCEPT:**

A parcel of land in Block "I" of the Western Division of the City of Lake City, Florida, in Section 31, Township 3 South, Range 17 East, more particularly described as follows:

Begin at the intersection of the Northerly right-of-way line of Duval Street with the Easterly right-of-way line of Seventh Street (a 53.5 foot right-of-way); thence Northeasterly along said right-of-way line of Duval Street a distance of 116.35 feet; thence North 0219′27″ West, 57.00 feet; thence South 8758′03″ West, 77.30 feet to a point on the arc of a curve concave Northeasterly having a radius of 44.5 feet; thence from a tangent bearing of North 67132′51″ West run Northwesterly along said curve through an angle of 14109′47″ a distance of 11 feet; thence North 3636′56″ East, 4 feet; thence North 5048′34″ West 4 feet; thence South 3636′56 West 4 feet to a point on the arc of a curve concave Northeasterly having a radius of 44.5 feet; thence from a tangent bearing of North 4814′03″ West run Northwesterly, North and Northeasterly along said curve through an angle of 5325′06″ a distance of 41.69 feet to the Easterly right-of-way line of said Seventh Street; thence South 0511′03″ West along said right-of-way line a distance of 103.91 feet to the POINT OF BEGINNING.